McFADDEN v. HEFLEY.

1. Whether every devise of real estate is specific since the act of 1858 (12 *Stat.*, 700), is an open question in this State.
2. Where a certain sum is given by will to A to be invested by the executors in land—but not in any particular parcel of land—this provision will be regarded for some purposes as a devise of real estate under the general rule of equitable conversion, but not so as to dispense with the necessity of the executor's assent, or to relieve it from contributing *pro rata* with other legacies of personalty to the payment of debts.
3. A bequest of "all the horses, mules, cows, hogs, wagons, farming implements, household and kitchen furniture, on the plantation whereon I now reside," is a specific legacy.
4. A bequest of dividends on certain specified stocks, without any disposition of the stocks themselves, carries the stocks also, and is specific.
5. After providing for certain specific legacies, testator directed his executors to dispose of his other property and collect all moneys due him, and to use the interest for certain purposes and then divide among certain of his children. *Held*, that these legacies were not specific.
6. A devise of "the plantation whereon I now reside" is specific.
7. In appropriating to the payment of testator's debts property disposed of by will to devisees and legatees, general legacies must abate before specific legacies, and specific legacies before specific devises.

Before PRESSLEY, J., Chester, March, 1887.

This was an action commenced in January, 1887, by J. C. McFadden, administrator *cum testamento annexo* of J. M. Hefley, deceased (who died in 1885), against the legatees and devisees of the testator, for a construction of his will. This will was as follows :

In the name of God. Amen. I, J. M. Hefley, of the State and county aforesaid, being of sound and disposing mind and memory, do make and publish the following as my last will and testament :

Item 1. I give, devise, and bequeath to my wife, Rebecca Hefley, during her life or widowhood, the plantation whereon I now reside, and at her death, or in the event of her marrying again, I give and devise the same to my son, William Henry, to be held by him in trust for his own use and benefit, and for the use and benefit of all my other children by my said wife, Rebecca, equally, the said plantation to be the common homestead of all

my said children, so long as they may choose to occupy it as such, and in the event of any of them removing therefrom, then the ones so removing are to be entitled to receive from the net proceeds of said plantation such amount as will equal that of those who remain thereon. My said son, William Henry, is to have the control and management of the said plantation.

Item 2. I give and bequeath to my wife, Rebecca, all the horses, mules, cows, hogs, wagons, farming implements, household and kitchen furniture on said plantation, to have and to hold the same during her life or widowhood, and at her death, or in the event of her marrying again, I give and bequeath the same to my said son, William Henry, on the same conditions and limitations for the same purpose as is set forth in the preceding item in regard to my real estate.

Item 3. To my grandchildren, the children of Sarah Fudge, my deceased daughter, I give and bequeath one hundred dollars each, to be paid to them by my executors as they severally reach the age of twenty-one years.

Item 4. To my daughter, Margaret Nunnery, I give and bequeath four hundred dollars, to be invested by my executors in a homestead, the title to which is to be made to the said Margaret Nunnery and the heirs of her body.

Item 5. To my daughter, Mary Simpson, I give and bequeath four hundred dollars, to be invested in a homestead by my executors, the title to which is to be to the said Mary Simpson and the heirs of her body.

Item 6. I direct that my executors hereinafter named shall not dispose of the stock I now hold in the National Bank of Chester and the Fishing Creek Manufacturing Company, but shall hold the same, and the dividends arising thereon shall be paid by them to my said wife, Rebecca, so long as she shall live, or so long as she shall continue a widow. At her death, or in the event of her marrying again, the executors shall collect the said dividends and divide them equally among my children by my said wife Rebecca.

Item 6. I direct that my executors dispose of all my other property not herein specifically disposed of, and that they shall collect all moneys due me; that the same be deposited in the National Bank of Chester, or some other safe depository, and that the interest accruing thereon be used for paying expenses of schooling the children; and, further, that the said money so deposited be equally divided among the children of my wife, Rebecca, to be paid to them severally as they reach the age of twenty-one years.

Item 7. I appoint John Lyle and William Walker to be the

executors of this my last will and testament, hereby revoking all former wills by me heretofore made.

In testimony whereof I have hereunto set my hand and affixed my seal this 11th day of July, A. D. 1883.

J. M. HEFLEY. [L. S.]

The Circuit decree and exceptions are fully stated in the opinion.

*Messrs. W. B. Wilson, jr.*, and *Geo. W. Gage*, for appellants.

*Messrs. G. J. Patterson* and *Glenn & McLure*, contra.

March 28, 1888.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   The questions raised by this appeal are as to the proper construction of the will of J. M. Hefley, deceased, a copy of which is set out in the "Case," and should be incorporated in the report of this case.

In item 1 of the will testator devised to his wife, the defendant, Rebecca Hefley, the plantation on which he resided, with limitations over to her children.   In item 2 he gives to his said wife, with like limitations over to her children, "all the horses, mules, cows, hogs, wagons, farming implements, household and kitchen furniture on said plantation."   In item 3 he gives to certain of his grandchildren one hundred dollars each.   Item 4 is in these words :   "To my daughter, Margaret Nunnery, I give and bequeath four hundred dollars, to be invested by my executors in a homestead, the title to which is to be made to the said Margaret Nunnery and the heirs of her body."   In item 5 a similar provision is made for his daughter, Mary Simpson, in substantially the same language as that made for Margaret Nunnery in the 4th item.

In item 6 the testator directs his executors not to dispose of his stock in the National Bank of Chester and the Fishing Creek Manufacturing Company, but to hold the same and pay over the dividends arising therefrom to his wife, Rebecca, during her life or widowhood, and at her death or marriage divide said dividends among his children by his said wife, Rebecca.   In the next item, which is also numbered 6, the executors are directed to dis-

pose of all other property not specifically disposed of, collect all money due, and deposit the same in bank, "and that the interest accruing thereon be used for paying expenses of schooling the children; and, further, that the said money so deposited be equally divided among the children of my wife, Rebecca, to be paid to them severally as they reach the age of twenty-one years."

The testator having made no provision for the payment of his debts, doubtless supposed that he would leave none. It turns out, however, that such is not the case, and the controversy is as to what provision shall be made for the payment of the debts and legacies. The Circuit Judge held that items 1, 4, and 5 are devises of real estate, and as such are specific, and must therefore be provided for, after payment of the debts, before any provision can be made for any of the legacies, either general or specific. He also held that "the widow is entitled to receive the dividends on the stocks bequeathed in item 6 of said will, less so much thereof as may be required to pay interest accrued since death of testator. The remainder of the debts and expenses must be paid out of the corpus of the personal property bequeathed in items 2 and 6 of said will, and leave is hereby granted to plaintiff to sell so much of the same as may suffice to pay said debts and expenses and the costs of this case. Nothing is left to satisfy the legacies of item 3 and of the second item 6."

From this judgment Rebecca Hefley and her children appeal upon the several grounds set out in the record, which raise, substantially, the following questions: 1st. Whether items 4 and 5, which stand precisely on the same footing, are specific devises of real estate, and as such entitled to priority over specific legacies. 2nd. Whether item 2 is a specific legacy. 3rd. Whether item 6 is a specific legacy. 4th. Whether the second item numbered 6, is a specific legacy.

There can be no doubt that the rule originally was that all devises of real estate are specific, and this, as stated by Mr. Jarman in his valuable work on wills, at page *587, and again at page *595, of his 1st vol., was because, prior to the statute of 1 Vict. (1838), very much like our act of 1858 (12 *Stat.*, 700), after acquired real estate did not pass under a will. Now,

as these statutes have taken away the reason of the rule, a doubt has been suggested by Judge Wardlaw in *Laurens* v. *Read* (14 *Rich. Eq.*, 256), whether that rule still obtains, though from the authorities cited by Judge Hudson in his Circuit decree in *Moore* v. *Davidson* (22 *S. C.*, at page 95), it would seem that in England the rule is still of force, and in this State, so far as we are informed, there has been no authoritative decision upon the subject. But as we do not regard items 4 and 5 of the will under consideration as devises of real estate, at least so far as the question raised here is concerned, we need not consider the effect of the act of 1858 upon the rule above referred to.

The ground upon which it is contended that these items are devises of real estate, is that Courts of Equity regard that as done which ought to be done, and therefore where land is directed by a will to be sold and converted into money, these courts will regard the land, even before an actual sale, as personalty, and upon the same principle where money is directed to be invested in land the provision will be regarded as a devise rather than as a bequest. But while this' is a general principle upon which Courts of Equity act, it is not universally true. That is to say, that where money is directed to be laid out in land it will not, *for all purposes*, be regarded as land. In *Hinton* v. *Pinke* (1 *P. Wms.*, 539), a money legacy was given to be laid out in land, and upon a deficiency of assets it was held that this legacy should be regarded as land, only for the amount which should remain after it had contributed its proportion towards making up the deficiency in the assets. The Lord Chancellor said: "I agree this £1,500 legacy shall be taken as land, but what the legacy is, or how much is to be laid out in land, is the question"; and it was held that the legacy must abate.

There is a very good reason for this. The whole personal property of the testator, which is the primary fund for the payment of debts, devolves upon the executor, and he is responsible to the creditors for the satisfaction of their demands, to the extent of the entire personal estate, "without regard to the testator's having by the will directed that a portion of it shall be applied to other purposes." 2 *Wms. Exrs.*, *982. From this follows the rule that the assent of the executor, which is presumptive evidence of

a sufficiency of assets, to every legacy, whether general or specific, is necessary in order to perfect the legatee's title. Until such assent, the legal title to all of the personalty is in the executor, which he holds in trust, first to discharge the debts, and then to pay the legacies in their proper order. Now, upon the principle that where money is directed to be laid out in land, the thing given is converted into the character of that in which it is directed to be invested, it is easy to see that a testator might, by directing his entire personal property to be invested in land, strip the executor of all means of paying the debts, and thus force the creditors to pursue the land.

It seems to us, therefore, that where, as in the present case, a pecuniary legacy is given, and the same is directed to be laid out in land, while, for some purposes, such a testamentary provision may be regarded as a devise of real estate, yet it cannot be so regarded for all purposes, and that the assent of the executor is necessary to perfect the title of the legatee; and that until such assent, the legacy constitutes a part of the personal assets of the testator, and as such must be applied, as the other personal estate, to the payment of debts.

It will be observed, too, that in these items, 4 and 5, the thing given is a specified *sum of money*, and the executors are charged with a trust to invest such money in land. The testator does not direct his executors to purchase a certain piece of land, and give *that land* to the legatee, but he gives a specified sum of money, to be invested in land. Until the executors had made provision for the payment of all of the debts, they would have no authority to divert any of the fund in their hands for that purpose—the personal estate—even though the testator may have "directed that a portion of it shall be applied to other purposes." It seems to us, therefore, that the Circuit Judge erred in holding that items 4 and 5 should, in this case, be regarded as devises of real estate.

2nd. In 2 *Fonbl. Eq.*, 376–7, it is said, upon the authority of *Sayer* v. *Sayer*, 2 *Vern.*, 688: "Where one devises to his wife all of personal estate at W., this is a specific legacy, and is as if he had enumerated all the particulars there." So in 2 *Wms. Exrs.*, *849, after a statement that a "bequest of all a man's per-

sonal estate generally is not specific," it is said: "But if a man, having personal property at A. and elsewhere, bequeath all his personal estate at A. to a particular person, the legacy is specific; * * * and so is a bequest of all the testator's goods and chattels in a particular county." In *Pell* v. *Ball* (*Speer Eq.*, at page 84), it is said (italics ours): "Whether a legacy is specific or not, must necessarily depend upon the nature of the thing referred to and described in the will. If the thing be capable of individuality, as a ring or picture, or if it be an assemblage of things, as a library or cabinet, or something capable of being separated by sensible distinctions, *as the property on a particular estate ;* in all such cases the descriptions in the will set forth with distinctness the subject of bequest and make it specific. * * * It may be safely affirmed, I think, that whether a bequest couched in general terms is specific or otherwise, depends on this: if the things falling within the terms, when enumerated (or if they had been enumerated by the testator), are in their nature specific, then the legacy is specific; otherwise it is not." This language of Johnston, chancellor, is referred to with approval by Dunkin, chancellor, in his Circuit decree in *Godard* v. *Wagner* (2 *Strob. Eq.*, at page 9), which, upon this point, was adopted by the Court of Appeals. See, also, *Brown* v. *James*, 3 *Strob. Eq.*, 24. Indeed, in *Warley* v. *Warley*, *Bail. Eq.*, 397, Harper, chancellor, goes so far as to say that "A bequest of the testator's whole personal estate, or of the residue after specific legacies out of it, is to be regarded as specific," though the subsequent case of *Henry* v. *Graham* (9 *Rich. Eq.*, 100) seems to be inconsistent with that view.

Under these authorities, we hold that the bequest in the second item of the will must be regarded as specific. The things falling within the terms of this bequest are in their nature specific, and susceptible of being enumerated and specifically designated. It is a bequest of personal property *on a particular estate*, and, as such, capable of being singled out and specifically delivered.

Our next inquiry is as to the character of the bequest in item 6. It will be observed that the stocks therein referred to are not directly and expressly disposed of, or given to any one, but only the dividends thereon. There can be no doubt, under the authorities above cited, that if these stocks, and not merely the dividends

arising therefrom, had been directly and expressly given to the beneficiaries therein designated, the bequest would have been specific. But "where the interest or produce of a fund is bequeathed to a legatee, or in trust for him, *without any limitation as to continuance*, the principal will be regarded as bequeathed also. Thus an indefinite gift of the dividends gives the absolute property of the stocks." 2 *Wms. Exrs.*, \*864; *Philipps* v. *Chamberlaine*, 4 *Ves.*, 51; *Page* v. *Leapingwell*, 18 *Id.*, 463; *Adamson* v. *Armitage*, 19 *Id.*, 418; *Earl* v. *Grim*, 1 *Johns. Ch.*, 494. Here the bequest of the dividends was without limitation as to continuance, and there being nothing in the will to show that the testator intended to make any other disposition of the stocks themselves, under the rule stated they passed with the dividends, and, as we have said, the bequest must be regarded as specific.

The next question is whether the bequest mentioned in the second item numbered 6 can be regarded as specific. We see nothing in the terms of this item, or in the character of the property there disposed of, which would invest it with the character of a specific bequest. It is couched in the most general terms, and the property referred to is not specifically designated.

Item 1 is clearly a specific devise of real estate, and cannot, therefore, be abated until, first, the general legacies and then the specific legacies are exhausted. *Warley* v. *Warley, supra.* It was argued, on behalf of appellants, that there is no priority as between specific devises and specific legacies, but that when abatement becomes necessary, they must abate *pro rata*. While, under the view which we take, this may not become a question of any interest to the appellants, yet, to avoid misconception, we desire to say that we do not concur in that proposition. The rule is otherwise. See *Hull* v. *Hull*, 3 *Rich. Eq.*, 65, recognized in *Farmer* v. *Spell*, 11 *Rich. Eq.*, at page 549.

The judgment of this court is, that the judgment of the Circuit Court be modified in accordance with the views herein announced, and that the case be remanded to that court for such further proceedings as may be necessary.