E. A. REIMER, as Administrator of the Estate of Clara A. Reimer, deceased, and E. A. REIMER, in his own right, *Appellant*, vs. CARL W. SMITH, as Trustee, CARL W. SMITH, in his own right, R. H. S. W. HOLDING COMPANY, a corporation of the State of Florida, ARTHUR KERKER, ALBERT D. HUBBARD, CHARLOTTE W. HILL, MARY L. BATES, MOLLY BUTLER, ESTER BUTLER, MINERVA PECKHAM, NORA PERUZZY HELD, SUSIE MAE SMITH, ANNA FRIEWALD, EMMA WEDDING, EARL WEIBUSCH, A. W. WIEBUSCH, and ANCIENT ARABIC ORDER OF NOBLES OF THE MYSTIC SHRINE OF NORTH AMERICA, *Appellees*.

142 So. 603.

Division A.

Opinion filed June 13, 1932.

*Hudson & Cason,* for Appellant;

*Hubbard & Hubbard* and *Loftin, Stokes & Calkins,* for Appellees.

ELLIS, J.—Clara A. Reimer died during the month of December, 1930. She was, before and at the time of her death, a resident of Miami, Florida. She was, in July, 1930, the owner in fee simple of certain lands lying in Dade County, Florida. She was the owner also of a certain mortgage upon which was due about nine thousand dollars.

On the 16th and 21st days of July, 1930, she conveyed and transferred the property, lands and mortgage, to R. H. S. W. Holding Company, a Florida Corporation, in consideration for which all the capital stock of the corporation was issued to four persons as follows: ninety-seven shares to Mrs. Clara A. Reimer, and one share each to Carl W. Smith, Arthur Kerker and Albert D. Hubbard.

On the 30th day of October, 1930, Mrs. Reimer, by a written instrument under seal, transferred the ninety-seven shares of stock in the Corporation held by her to "Carl W. Smith, Trustee" to be held by him for the benefit of Mrs. Reimer during her lifetime and upon her death for the benefit of certain other named beneficiaries in certain proportions.

The deed required that the Trustee and the executor or administrator or the successors in office of the Trustee should hold the shares of stock "upon trust, full power of ownership therein and the attendant privileges in that regard such as voting of same, etc." The Trustee was required to "receive all dividends from time to time paid upon the said shares and so soon after the receipt of any dividend as may be convenient shall divide such dividend amongst all of the beneficiaries hereinafter named, in the proportion and/or proportions as is hereinafter set forth."

Mrs. Reimer, under the terms of the trust, was to receive all the dividends, earnings or income from the shares during her lifetime. Upon her death the other named beneficiaries, their "heirs and assigns," should receive the income from such shares in the proportions named in the deed. The Trustee was given power to name his successor by deed or will and to require such bond as he should deem proper.

It was provided that if any beneficiary sought to cancel or to modify the terms of the trust by legal proceedings or otherwise then such beneficiary should be eliminated from the terms of the trust and his or her share should be distributed pro rata among the remaining beneficiaries.

On the 21st of March, 1931, E. A. Reimer, brother to Mrs. Clara Reimer and administrator of her estate but not named as one of the beneficiaries in the deed of transfer by which Mrs. Reimer's stock was assigned to Carl W. Smith as Trustee, exhibited his amended bill of complaint

in the Circuit Court of the Eleventh Circuit for Dade County against Smith as Trustee and all the beneficiaries of the trust named in the deed, except Emma Weibusch, who had died, so Earl and A. W. Weibusch, her heirs at law, were named as defendants and R. H. S. W. Holding Company also A. Kerker and A. D. Hubbard as defendants because they are officers and directros of the R. H. S. W. Holding Company.

The purpose of the bill was to attack the validity of the trust deed as having been executed contrary to public policy in that it violated the rule against perpetuities, perpetual private trusts or rule against restraints on alienation.

The bill contained appropriate prayers, if the theory upon which it was framed is sound, which is that as the trust deed was an invalid attempt to create a perpetual trust in violation of the rule against restraints on alienation and as the conveyance by Mrs. Reimer of her property to the R. H. S. W. Holding Company was part of the same scheme or purpose of Mrs. Reimer to create the trust that her deeds of conveyance and transfer of her property to that Corporation, dated July 16 and 21, 1930, respectively should be cancelled as well as the assignment of the stock in the corporation to Smith as Trustee.

There was also a prayer that C. W. Smith and the beneficiaries named in the trust deed be declared to hold the stock as trustees for the complainant as administrator of Mrs. Reimer's estate and that they be each enjoined from disposing of the stock and that the R. H. S. W. Holding Company be required to account for all funds and properties which may have come into its possession. There was also a prayer for general relief.

A demurrer to the bill was sustained and from that order the complainant appealed.

The only question presented involves the rule as to

private perpetual trusts or the rule against restraints on alienation as applied to the circumstances as alleged in the bill of complaint.

The Chancellor held that no invasion or violation of the rule was apparent from the allegations of the bill. If the trust deed is valid it of course follows that the conveyance of land and transfer of the mortgage by Mrs. Reimer to the R. H. S. W. Holding Company, evidenced by her two deeds of July 16 and 21, 1930, were not invalid.

The trust deed deals only with personal property as it involves only the shares of stock held by Mrs. Reimer in the corporation. Personal property, as well as real property, at common law was subject to the rule against restraints on alienation. 21 R. C. L. 335.

An examination of the deed discloses certain features which it will be well to observe: first, the stock was transferred to the Trustee, with full power of ownership therein "and the attendant privileges in that regard, such as voting of same." Under this phase of the deed the stock could be registered in the name of the trustee, that is transferred upon the books of the corporation which is effected by the taking up of the old certificates and the issuing of new ones by the corporation in the name of the Trustee. See Sections 6543-6544-6545 C. G. L. 1927; 14 C. J. 751.

The legal title to the stock was intended to be completely vested in the Trustee as shown by the use of the phrases "full power of ownership therein" and "the attendant privileges in that regard such as voting of same." The right to vote at a stockholders' meeting is an incident of the ownership of stock in a corporation and to deprive a stockholder of the right to vote is to deprive him of an essential attribute of his property which ordinarily is not permissible. 14 C. J. 898 and authorities cited.

A trustee is entitled to vote in respect of the stock stand-

ing in his name as trustee of others even where the trustee has no beneficial interest in it. Where the trust is not disclosed on the Company's books the reason is even more cogent that the trustee may vote the stock. 14 C. J. 903.

There are authorities holding that the trustee must be the trustee of an active trust before being permitted to vote, or if he holds the stock uncoupled with an interest he must vote as the beneficiaries direct.

In the case at bar however the terms of the deed creating the trust definitely settled all such questions. The deed recited that the shares had been transferred to C. W. Smith to be held by him for the benefit of the parties thereafter named in the deed. Nothing to the contrary appearing the actual transfer of the shares was accomplished by the usual method which is the filling in and signing of the blank certificate and power of attorney on the back of the stock certificates. The trust was declared by a separate instrument and so far as the record discloses was not intended to appear on the books of the corporation. The deed defined the Trustee's interest as that of "full power of ownership" and the "attendant privileges in that regard" such as voting, etc.

In the second place, the trust cannot be said to be a mere naked trust because the power of voting the stock which was practically the entire capital stock of the corporation entailed the duty of assuming entire responsibility for the management of the affairs of the corporation. Upon his activities in the corporation's management would depend the size of dividends to be distributed to the beneficiaries. The corporation's assets consisted of the lands which had been conveyed to it by Mrs. Reimer and the Perry mortgage, on which there was a balance due of nine thousand dollars, which Mrs. Reimer assigned to the Company. Dividends on the stock would depend on prudent management of the corporation's affairs, even a higher degree of

skill so far as this corporation is concerned than is described by that term. It might require ability of extraordinary character amounting to genius of the highest order to produce worthwhile results from those assets. The Trustee's responsibilities were comparatively great. In addition to those responsibilities be was required to collect the dividends and make distribution among the beneficiaries, among the eleven of whom, exclusive of himself, were several women and a charitable institution. The third feature of the trust is the power of the Trustee to name his own successor.

The persons who were named in the trust deed to receive from the Trustee the dividends, earnings or income which the Trustee was required to collect and pay over were thirteen in number. Mrs. C. A. Reimer was to receive from the Trustee during her lifetime all the "dividends, earnings or income" from the shares. Upon her death ten of the named persons and "their heirs and assigns," "The Children's Hospital Fund A. A. O. N. M. S. of N. A." and its successors and assigns, and Carl W. Smith as Trustee and "his successors in trust" were to receive the income from the shares in certain proportions defined by the terms of the deed.

It is clear that the trust was intended to continue during a life in being and for an indefinite period thereafter. The twelve persons including the "Childrens Home" named as persons to receive the dividends upon the death of Mrs. Reimer could not by any action of theirs during Mrs. Reimer's lifetime alter the terms of the trust in any manner so as to affect the interests of Mrs. Reimer, so their interests were limitations over contingent upon the death of Mrs. Reimer, so far as enjoyment was concerned, but their interests were nevertheless vested, because a vested interest does not necessarily include a right to possession and if the interest is vested it is not subject to the rule

againt perpetuities, even if the period may be remote when it shall come into possession. Gray v. Whittemore, 192 Mass. 367, 78 N. E. Rep. 422, 116 Am. St. Rep. 246, 10 L. R. A. (N. S.) 1143; Gates v. Seibert, 157 Mo. 254, 57 S. W. Rep. 1065, 80 A. S. R. 625.

Therefore if the event on which a contingent remainder is limited must happen and the contingent become a vested remainder within the time allowed by the rule against perpetuities, the rule is not violated by the fact that the remainder so vested is not to be enjoyed until some future fixed time, or until the dropping out of an existing life estate. 21 R. C. L. 290; Madison v. Larmon, 170 Ill. 65, 48 N. E. Rep. 556, 62 A. S. R. 356.

Now if the interest in the shares of stock held by the Trustee became vested in those persons who were to receive the dividends from the Trustee upon the death of Mrs. Reimer and not in the Trustee to be held by him and his successor perpetually, it is clear that the deed violates no rule against perpetuities, perpetual trusts or accumulations.

Upon the death of Mrs. Reimer the beneficiaries, those persons named to receive "all the dividends, earnings or income from said shares" became the absolute owners of the shares of stock and might terminate the trust at any time. See McFadden v. Hefley, 28 S. C. 317, 5 S. E. Rep. 812; Page vs. Leapingwell, 18 Vesy Jr., 463, 34 Eng. Reprint 392, 394 text; Bishop v. McClelland, 44 N. J. Eq. 450, 16 Atl. 1; Sears v. Choate, 146 Mass. 395, 15 N. E. Rep. 786; Wise v. Commonwealth, 122 Va. 693, 95 S. E. Rep. 632; McKenzie v. Sumner, 114 N. C. 425, 19 S. E. Rep. 375; 2 Perry on Trusts (7th Ed.) Sec. 520.

The use of the phrase "heirs and assigns" appearing in the deed following the names of the beneficiaries in whom the complete interest vested upon the death of Mrs. Reimer contains words which do not always, nor did at

common law, carry the same signification. The word "heirs" is peculiarly applicable in conveyances of real property and ordinarily is a word of inheritance and refers to a class of persons who take by succession from generation to generation and means all who are legally entitled to partake of the inheritance. See Connor v. Gardner, 230 Ill. 258, 82 N. E. Rep. 640; 15 L. R. A. (N. S.) 73; Turner v. Burr, 141 Mich. 106, 104 N. W. Rep. 379; Lavery v. Egan, 143 Mass. 389, 9 N. E. Rep. 747.

The word "heirs" however is not technically applicable to personal property. 29 C. J. 291. As applied to real property the word should be given generally its technical meaning, when not explained by the context. In the case at bar it is apparent that the word "heirs" was used as a word of limitation and not of purchase, although used in connection with a gift of personal property. The word "assigns" peculiarly applicable to the transfer of personal property, is a word which definitely fixes or determines the estate or degree of ownership held by the person to whom the property is transferred.

We are of the opinion therefore that the words used by the donor Mrs. Reimer clearly indicate that at the termination of her life the complete ownership of the shares of stock became vested in the twelve beneficiaries. That being true, the trust became determinable at any time upon the desire of the beneficiaries or either one of them as to his or her particular interest. In such case there are none of the elements of a perpetual private trust and no violation of a rule against perpetuities.

The able brief of appellant we have considered with great care, but we are unable to accept the premises on which the argument of the counsel for appellant rests.

The order appealed from is affirmed.

BUFORD, C.J., AND BROWN, J., concur.

680

WHITFIELD, P.J., AND DAVIS, J., concur in the opinion
and judgment.