[Civ. No. 14042. Second Dist., Div. One. Dec. 20, 1943.]

RICHARD COLE et al., Appellants, v. SADIE L. GILL, Respondent.

H. S. Shapiro and Marshall Abbott for Appellants.

Snyder & Fletcher and Louis T. Fletcher for Respondent.

WHITE, J.—This is an appeal from a portion of a judgment in favor of defendant, in an action brought to reform a promissory note and trust deed, and to cancel a promissory note.

The record discloses that on July 20, 1940, respondent Gill sold to appellants Cole a certain lot situate in South Pasadena which was improved with a large dwelling divided into three apartments, for an agreed price of $3,000. Of this amount $300 was paid in cash, and a trust deed was executed by appellants to secure the payment of a promissory note for the remaining $2,700, which was payable in monthly installments of $25 each.

The deed from respondent to appellants reserved to the former a life estate in one of the apartments in said dwelling, but through error said life estate was reserved to the "grantee" instead of the "grantor," and that portion of the judgment herein correcting such error is excepted from this appeal.

The complaint alleges that on the day the deed and trust deed were executed, it was agreed between the parties that in the event of the death of respondent Gill prior to the full payment of the trust deed, the balance remaining due thereunder should be cancelled and the appellants Cole should not be required to pay such balance; that through the mistake of the scrivener and by mutual mistake of the parties, the provision terminating the obligation of the appellants upon the demise of respondent was omitted from the trust deed and the note secured thereby, and the same were delivered to respondent and recorded without discovery by appellants of such omission.

Mrs. Cole's version of the transaction which took place on July 20, 1940, is to the effect that she, her husband and Mrs. Gill met at the office of Mr. Victor Spaulding, a real estate broker, in South Pasadena, to consummate the sale of the property, and at that time Mrs. Gill suggested that the note representing the balance of the purchase price be cancelled upon her death. Mr. Spaulding replied that that was "a job for an attorney" and took the parties to the office of attorney Louis T. Fletcher, located nearby. Mrs. Gill then stated to Mr. Fletcher that she wanted a life estate reserved to her in the lower north apartment and wished the trust deed and note cancelled upon her death; that she was going to make a will

but not that day. To this Mr. Fletcher replied: "If you are going to make a will, we won't put that (the two provisions) in the trust deed." Mrs. Cole testified that the note and trust deed were signed by her and her husband in blank, and because they were going on a trip and wanted something to show their agreement with Mrs. Gill, the latter at the suggestion of Mr. Fletcher executed an irrevocable will, the fourth paragraph of which provided "I further direct that in the event said note is no longer my property at the time of my death, that my said executor pay out of my estate the remaining balance of principal and interest unpaid thereon. It is my intent that the said Richard Cole and Rose Marie Cole shall be relieved from the burden of paying the balance of said note after my death." This will was witnessed by Mr. Spaulding and Mr. Fletcher and handed to Mr. Cole. A short time thereafter, Mrs. Gill and Mrs. Cole called at Mr. Fletcher's office for the deed and trust deed, which had meantime been recorded. Mr. Fletcher turned the trust deed over to Mrs. Gill saying that he had mislaid the original note but would send it to her when it turned up. Mrs. Gill then handed the documents to Mrs. Cole to keep for her in the latter's safe deposit box. It was too late in the day to place the documents in the box and Mrs. Cole took them home with her. When the Coles read the trust deed that evening, they discovered that "the provision where she was to have the north lower apartment had been recorded and was in the trust deed, but the provision that the note would be canceled at her death was not in there." Thereupon appellants Cole and respondent Gill called at Mr. Fletcher's office, and, according to Mrs. Cole, "Mrs. Gill said 'Mr. Fletcher when we came in to make this agreement, I wanted it stipulated in here that the note would be canceled at my death. We don't find it in there. Will you put it in there for the Coles?' Mr. Fletcher said, 'It is not necessary but to satisfy the Coles I will put it in there.' Whether he copied it or the secretary I do not know, but it was put in there." A second note was drawn at this time containing the cancellation clause, and was signed by the Coles. Also, the cancellation provision which had been inserted in the trust deed was initialed by Mr. Fletcher and the Coles, but Mrs. Gill, although present, did not initial the change. The revised trust deed was left with Mr. Fletcher for re-recording, and sometime later Mrs. Gill

and Mrs. Cole received the document from Mr. Fletcher and Mrs. Cole put it away in her safe deposit box. Early in the year 1942, when Mr. Cole who was then engaged in the war effort, was leaving the country, Mrs. Gill asked him for her papers which were in the Cole safe deposit box. Mrs. Cole did not know which documents belonged to Mrs. Gill, so she took the joint tenancy deed to the property and the trust deed, not to Mr. Fletcher, but to another lawyer, who informed her that the trust deed belonged to Mrs. Gill, but that it looked to him as though the provision regarding cancellation had been added after the document was recorded. "And I said, 'Yes, we know that, but it has been re-recorded.' He said, 'Well, you go to the Hall of Records and find out if it has before you hand her the papers.' I went to the Hall of Records and the man looked it up in the books and I read that page where it was recorded and that provision that the note would be cancelled was not recorded, and I asked the man there if he wouldn't re-record it then. He said, 'No, I can't have that recorded, because Mrs. Gill has not initialed it the way you and Mr. Cole have.' He said, 'Have her initial it and then bring it down and I will have it recorded.' I thought, being Mr. Fletcher was the one that made that out, I went to him, and when I went in his office: 'Oh, yes,' he said, 'Mrs. Cole, I have been looking for you. Mrs. Gill has been in to see me,' and I told him about the paper and he said, 'How about having Mrs. Gill initial it, being she didn't initial it at the time it was made?' And I said, 'I want to have it re-recorded, and I thought it had been recorded.' He said, 'That is a mere formality; she will initial that.' I said, 'When do you want to go to see Mrs. Gill?' And he said, 'Why don't you leave the paper with me, and I will take it to her and have her initial it?' I said, 'No,' it had not been done right the first time, I wanted to be sure when she initialed it, and I wanted it done right this time, and I wanted to be the one to have it recorded. . . . I went to hire a lawyer for a few hours so he would come to Mrs. Gill's house and witness that initialing on there." At this meeting there were present Mrs. Gill, Mrs. Cole, the two attorneys, Fletcher and Cockerell, and Mrs. Cole's sister-in-law. "Mr. Fletcher went in to see Mrs. Gill by himself first, then he came into the other room and called us to come in to Mrs. Gill . . . and Mr. Cockerell showed Mr. Fletcher the trust deed and he said,

'All we want here is to have Mrs. Gill initial it, and Mrs. Cole would like to have it recorded.' He (Mr. Fletcher) said, 'Mrs. Gill you get the first note.' He handed the first note to me, he handed it to Mr. Cockerell. He said, 'This is the original deal,' he said, 'that doesn't count.' Mr. Cockerell said, 'Being you made the second note here, why don't you just destroy the first note?' He said, 'No, no. I advised Mrs. Gill not to make such a deal, that the first note is the one that should count.' I asked Mrs. Gill if she didn't want the deal to stand that way. I said, 'Don't you want the deal to stand the way we made it?' She said, 'Yes, Marie, I want to do what is right.' Mr. Fletcher says, 'No, no, no. I advised you not to sign that, I won't talk to you further.' . . . So he put the trust deed and note in his pocket. . . .˙ He already had the note, but the trust deed Mr. Cockerell handed to him, and Mr. Cockerell said, 'Now, what will I have to prove that the deal was made that way? I don't have anything to prove the deal was made that way.' He (Mr. Fletcher) said, 'That is right; now you have nothing.' "

Mr. Victor Spaulding testified that the parties came to his office about July 20, 1940, and Mrs. Gill stated to him that "Mr. Cole had been a real friend to her and she wanted to do something for him if she could, and she wanted to have the note cancelled at her death and the deed cleared to them for what they had paid in."

Mrs. Gill testified as follows: "I think the terms of the papers and the transaction were discussed between all of us. . . . The first time it was discussed was when those papers were made out, and Mr. Fletcher, a stranger to me, lifted his head and looked askance at me when I allowed that, but I was in very poor health, and I felt Dick (Mr. Cole) was a good friend. I wanted to see him get a good home, I wanted to make it as easy as it possibly could be and upon writing the papers I said, 'Now, when you come to the part about the payments,' understand, the payments were to be made, but I said I would just have that—— when he was making the notes for the payments, I said, 'Let the payments be canceled after my death.' " The second note was read into evidence containing the clause "providing that upon the death of the said Sadie L. Gill no further payments shall be made and this note shall terminate and any balance remaining unpaid thereupon shall be canceled." Whereupon, Mrs. Gill was

asked: "Q. Now with the information before you, did you understand the meaning—— do you understand the meaning of that provision in the note?" To which she replied: "A. I think I did. Q. And you understood it then? A. Didn't I make it? . . . Q. Was that portion incorporated in the copy of the note attached to the trust deed in your presence? A. That specific thing that you read was incorporated when the papers were made out in Mr. Fletcher's office." Mrs. Gill further testified "It seems to me when that was originally made out it was specified, because this was a dear friend of mine, and I have in mind others, I would like when I passed away that this should be canceled in their favor. I remember that, Mr. Fletcher, but I can't recall just when you put it in, or how you put it in, or anything about it, only I remember I made the request."

Mr. Fletcher took the stand on behalf of the respondent Gill and testified in narrative form as follows: "On July 20th, Mr. Spaulding called me on the telephone and said he had some parties there who wanted to draw a note and wanted it to terminate on the death of the payee of the note, and wanted to know if it could be done. . . . I said, 'Yes, it can be done, but I don't recommend such a thing, as it would render the note non-negotiable.' . . . Mr. and Mrs. Cole were there and Mrs. Gill was there, and they told me—— Then they brought up the question that the note was to be canceled upon Mrs. Gill's passing. . . . So I told them that I didn't recommend such a transaction because of the fact that it rendered the note practically non-negotiable, that it would not give Mrs. Gill the opportunity to meet a contingency in the event she might have to fall back upon the balance of that note by cashing it, and we talked at quite length, and the sum and substance of it was that I drew a trust deed and the note; that is the first note; and they were executed by Mr. and Mrs. Cole in my presence. . . . Mrs. Gill said this, 'I want them to have the property after I am gone. I have no one else to leave it to.' That Mr. Cole and her had been very close friends. Then I suggested that the best procedure would be to draw a will and to leave it to them by will. Some one spoke up and said that a will can be canceled. I said, 'Yes, a will can be canceled, but it can be made a part of the consideration, and it can be irrevocable.' So as a result, I drew up the will. . . . Mrs. Gill and Mrs. Cole and Mr. Cole, they

came in and said they wanted the note to show in this transaction that it would be canceled upon Mrs. Gill's death. Now, that was some little time after July 20th. . . . I said, 'Now, Mrs. Gill, this is what you want?' She said, 'Yes, I want Dick to have everything, I have no one else to leave it to, and that is what I want.' So I said, 'Well, if that is what you want, all I can do is to do what you tell me to do,' and . . . I wrote this new note, and probably said at that time, 'If this is what you want, we won't bother about the old note, we will just draw a new note and make it conform to that.' . . . At any rate, the new note was drawn which provided as is shown here for the cancelation, and I either typed in myself, or had the girl type in that part which is attached to Plaintiffs' exhibit 4, which is in original typing, and which calls for the cancelation of the note upon her death and I had Mr. and Mrs. Cole each initial it, and I initialed it also as a notary public. At that time the trust deed had been recorded. . . . Now, I will say this, that I did not . . . have Mr. and Mrs. Cole sign this note in blank. Under no circumstances do I do such a thing, and I didn't do it in this case. I do recall that Mrs. Cole came to my office and she presented the trust deed . . . and she said that the fact that she and her husband had initialed the addition to the trust deed and the fact that I had notarized it, was not sufficient evidence of Mrs. Gill's signature, and she wanted Mrs. Gill to initial it. I am quite certain that was after Mrs. Gill came to me in what I might say was an attorney and client relationship. I have not considered the first transaction when they all came in as being anything more than representing the group, and I think I did ask her for the note that day, but I didn't tell her that I would take and have it recorded. . . . I went over there and met Mr. Cockerell in the presence of Mr. and Mrs. Cole. He asked Mrs. Gill to initial this addition to the trust deed and also to initial the new note and she refused. It was Mr. Cockerell handed me the trust deed and I kept it." In answer to the following question asked upon cross-examination, "Q. Mr. Fletcher, did you advise Mrs. Gill to refuse to initial the trust deed or the note?", the witness replied: "A. I don't recall whether I advised her then, or not, I will say this much, I don't think Mrs. Gill will object, I had advised her not to, when she came to me in an attorney and client relationship . . . I said, 'Just don't initial it.' Q. Now,

when they had come back again, subsequent to the date of the recordation of the deed of trust . . . and called your attention to the fact that the trust deed and note did not contain that provision pertaining to the cancelation of the unpaid purchase price or balance at the time of Mrs. Gill's death, you then proceeded to make out the second note; is that right? A. Well, I think it was the second time, or maybe the third time, but when they came in and told me that they wanted the change made, I turned to Mrs. Gill and said, 'Do you want this?' She said, 'Yes.' As I said before, she had no one to leave it to, that is the way she wanted it. . . . In rebuttal, I want to say this, after I explained to Mrs. Gill the reasons why I thought she should not have the note canceled, she then said that was the way she wanted it, *without the cancelation.* . . . (In) Mr. Cole's and Mrs. Cole's presence . . . that is the day the note and trust deed was made out. MR. BRODY: This is the day you are advising not having it initialed? THE WITNESS: No, the first time, July 20th, when the complete transaction was discussed in our office. As I said before, Mrs. Gill at first wanted the note canceled on her death. When I explained my objections or reasons why I thought it should not be . . . and advised her it should not be, she seemed to comprehend it. She said, 'All right, we will have it the way you suggest,' or something to that effect, so did Mrs. Cole and so did Mr. Cole.''

■ As a first ground of appeal it is urged by appellants that the court erred in making the following conclusion of law: ''That no agreement was entered into between the plaintiffs and the said defendant Sadie L. Gill, either prior to July 20, 1940, or thereafter, agreeing that said note would be cancelled upon the death of said Sadie L. Gill or that no further payments would be required upon said obligation, or that said obligation would terminate at her death; and no agreement was entered into between plaintiffs and said defendant at any time agreeing that said note or trust deed should contain a provision for the cancellation thereof upon the death of said Sadie L. Gill.''

We are in accord with appellants' contention in this regard because the court, upon substantial evidence, made the following findings: ''. . . that it is true that approximately ten (10) days after the execution of said trust deed and note the plaintiffs directed Louis T. Fletcher, as scrivener, to in-

sert upon the copy of said note contained in the trust deed and upon a new trust deed note the following clause and provision now contained in said Exhibit 'A,' to-wit: 'providing, however, that upon the death of the said Sadie L. Gill no further payments shall be made and this note shall terminate and any balance remaining unpaid shall thereupon be cancelled.' That it is true that the defendant Sadie L. Gill was present at the time plaintiffs directed said insertion upon said trust deed and note. That it is true that at the time said insertion was made said defendant was of the age of 80 years and was not represented by counsel.''

''That it is true that at the time said insertion was made in the note portion of said trust deed that Louis T. Fletcher, as scrivener, informed plaintiffs that the original note described in said deed of trust had been mislaid, and it is true that at that time the said scrivener suggested that a new promissory note be made in lieu of the note that was mislaid.''

''That it is true that at the time said insertion was made on said trust deed the plaintiffs did make and sign an additional note in the sum of twenty-seven hundred ($2700.00) dollars, dated July 20, 1940, in lieu of the aforesaid note that had been mislaid and it is true that there was added on said second note at the direction of the plaintiffs and in the presence of defendant Sadie L. Gill, the following provision: 'providing, however, that upon the death of the said Sadie L. Gill no further payments shall be made and this note shall terminate and any balance remaining unpaid shall thereupon be cancelled' and it is true that at said time there was also inserted upon the original trust deed the following provision: 'providing, however, that upon the death of the said Sadie L. Gill no further payments shall· be made and this note shall terminate and any balance remaining unpaid shall thereupon be cancelled.' . . .''

The foregoing factual findings lead inevitably to the legal conclusion that respondent is estopped to deny that she freely and voluntarily consented to the insertion of the clause which provided that the note would be cancelled upon her death and that appellants would not be required to make further payments thereafter. Having by her declarations, acts and conduct led appellants to believe by her consent to the aforesaid insertion that upon her death the note was to be cancelled and that the remaining unpaid balance thereon would be

remitted, and appellants having acted upon the belief engendered by respondent's acts and conduct, she cannot subsequently be heard to repudiate or falsify her prior acts and declarations (sec. 1962, subd. 3, Code Civ. Proc.; secs. 3519, 3516, 3517, Civ. Code; *Seymour* v. *Oelrichs,* 156 Cal. 782 [106 P. 88, 134 Am.St.Rep. 154]; *Carpy* v. *Dowdell,* 115 Cal. 677 [47 P. 695]). It is clearly demonstrated by the evidence that after appellants took possession of the property they expended in the neighborhood of $700 for repairs and improvements thereon, and that although respondent lived on the property she made no objections whatever to such expenditures.

Appellants must be upheld in their claim that the evidence does not support the finding by the trial court that it was neither through a mistake of the scrivener nor through the mutual mistake of the parties that the cancellation clause was omitted from the original note and trust deed of July 20, 1940, but that the plaintiffs knew on said date when they executed and delivered the trust deed and note to defendant that said instruments did not contain the cancellation clause and agreed with defendant that said provision should not be contained in said documents; that neither on July 20, 1940, nor at any other time, did defendant promise or agree that said instruments would contain a cancellation clause, but that on said date the parties agreed that no such provision should be contained in said trust deed and note. As we view the record it is barren of any evidence to support the foregoing findings of fact, but establishes the contrary thereof.

Appellants must also be sustained in their contention that the court erred in making its finding of fact numbered nine reading: "That it is true that the plaintiffs paid no consideration to Sadie L. Gill nor did she receive any from any person whomsover for the insertion of the aforesaid provision on said promissory note portion of said deed of trust, or for the making of said second promissory note, nor was any benefit conferred upon the said Sadie L. Gill by any other person, nor was any prejudice suffered or agreed to be suffered by any person for the making of said insertion."

First of all the record clearly shows that appellants suffered prejudice by reason of the expenses incurred by them in making improvements upon the property on the promise of respondent to cancel the note and forgive any unpaid balance

due upon her death. She received a benefit through the retention by her of a right to occupy a portion of the property during her lifetime. Under such circumstances a sufficient legal consideration was present (secs. 1605, 1606, Civ. Code). Another reason exists why the finding last mentioned cannot be upheld. Such finding is wholly outside the issues framed by the pleadings or raised by the evidence. The complaint alleges that the provision in question was omitted from the original papers by mistake and that its insertion later into the trust deed and also into the new note which was made to replace the original one that had been mislaid, was for the purpose of correcting this error. By her answer respondent merely denied these allegations. At no time, by way of special defense or otherwise, did she contend that the insertion of said clause was a new agreement, separate from the original agreement, and that there was no consideration for said second agreement. No such claims appear in the cross-complaint by which respondent sought a rescission of the entire transaction.

There being no issue before the court authorizing it to make the finding in question, and therefore, being a finding outside the issues in the case, it could not form an element in determining the judgment to be rendered (*Commissioners* v. *Barnard*, 98 Cal. 199 [32 P. 982]). We are not unmindful of the fact that the rule which we have enunciated is subject to the qualification that a finding may be made upon an issue not formally raised by the pleadings, but which arises during the trial; was treated by the parties as being properly before the court and where a trial upon such issue was had without objection. Such however is not the situation here. The record dictates the conclusion that no one except possibly the trial judge considered as being before the court the issue which gave rise to the questioned finding.

Finally appellants attack as unsupported by the evidence finding numbered three which reads as follows: "That it is not true that the said defendant, on July 20, 1940, or at any other time, promised and agreed that said note and trust deed would contain a provision to the effect that upon the death of the defendant Sadie L. Gill no further payments should be made or required and that the obligation of said promissory note should terminate and any balance remaining unpaid at the time of the death of the defendant Sadie L.

Gill should be cancelled, but it is true that on July 20, 1940, it was agreed between the plaintiffs and said defendant that no such provision should be contained in said trust deed and note."

In order to sustain this finding it becomes necessary to disregard all of the testimony in the case, including that of respondent herself, save and except only the testimony of attorney Fletcher. And a reading of the latter's testimony generates the conclusion that while he was opposed to making the provisions in the trust deed and note, as referred to in the challenged finding, that nevertheless, all of the interested parties to the transaction did so promise and agree, including his own client, respondent herein, who according to the attorney said "I want them (the appellants) to have the property after I am gone. I have no one else to leave it to."

In view of the fact that no findings were made on the issue of estoppel and because of the restrictions upon this court insofar as the credibility of witnesses is concerned, we are of the opinion that while a reversal is required, the cause should be remanded to the trial court for further proceedings rather than with instructions to enter a judgment for plaintiff.

For the foregoing reasons the judgment is reversed and the cause remanded for a new trial.

Doran, J., concurred.

York, P. J., dissented.

Respondent's petition for a hearing by the Supreme Court was denied February 17, 1944.