152 So.2d 480 (1963)
In re ESTATE of W. Carlton RENTZ, Deceased.
Bobbye F. RENTZ, Executrix of the Last Will and Testament of W. Carlton Rentz, Deceased, Appellant,
v.
The UNBORN GRANDCHILDREN of W. Carlton RENTZ, Deceased, Appellees.
No. 62-517.
District Court of Appeal of Florida. Third District.
April 30, 1963.
*481 Hendricks & Hendricks, Miami, for appellant.
Edwin O. Simon, Miami, for appellees.
Before PEARSON, TILLMAN, C.J., and CARROLL and BARKDULL, JJ.
PER CURIAM.
This is an appeal from a final order of the County Judge's Court in and for Dade County pertaining to a probate matter. After considering the briefs and hearing oral argument, the following order and opinion of the trial judge is adopted as the opinion of this Court.
"This cause came on for hearing before the Court upon the petition of Bobbye F. Rentz as executrix of the estate of W. Carlton Rentz, deceased, wherein the executrix seeks the construction of the last will and testament of the decedent to determine the proper distribution of the assets of the estate of the decedent under the provisions of Item V of the last will and testament. At the suggestion of the petitioner, the Court appointed Honorable Edwin O. Simon, a practicing attorney of this Bar, as guardian ad litem to represent the interests of the unborn grandchildren of the decedent, whose interests, if any, might be affected by such construction. The guardian ad litem for the unborn grandchildren of the decedent has filed his response to the said petition and the matter came on for hearing and argument before the Court upon the petition and the response aforesaid.
"W. Carlton Rentz was a resident of Dade County, Florida. He died testate at Miami, Florida on February 9, 1959. He left surviving him the following heirs at law:
"`Bobbye F. Rentz, his widow; Carla Adrienne Rentz, daughter, age 20; William Carl Rentz, II, son, age 18; Ralph Larry Rentz, son, age 9.'
"At the time of the execution of the last will and testament of the testator, W. Carlton Rentz, he had no grandchildren. At the time of his death there were no grandchildren. Only his widow and the foregoing named children of the decedent survived him.
"In and by his last will and testament, the testator provided for the payment of his debts and bequeathed his personal effects and personal jewelry to his two sons above named. The entire remainder or residuum of the testator's estate was disposed of in Paragraph V of his last will and testament in the following language, to wit:
"`I give, devise and bequeath all the rents and profits from the rest of my estate to my wife and children, share and share alike, to take and enjoy them for life with remainder to my grandchildren, per stirpes.'
"The wife and executrix, being dissatisfied with her portion of the estate of the decedent as provided in his will, has elected to take dower. Therefore, in construing the legal effect of Paragraph V above quoted, we are concerned only with the distribution of the assets of the decedent's estate as it pertains to the interests of the children of the decedent and the unborn grandchildren. The estate of the decedent for distribution has been liquidated and is in the sum of $52,385.38.
"The executrix, being the natural mother of the children of the decedent and representing them as such, takes the position that Paragraph V of the last will and testament of the decedent should be construed to the legal effect that a life estate is created by inheritance in the three minor children aforesaid and that the reversionary estate in fee which remains in the testator until the vesting of the contingency passes to the children of the decedent by descent and distribution, they being his heirs at law who now take because of the failure of the contingency of grandchildren, there being none in existence at the time of Testator's death, and that there is, therefore, a merger of *482 the life estate and the fee estate, and the children thus would now take absolutely in distribution.
"The guardian ad litem for the unborn grandchildren submits that the question presented is governed by §§ 689.17 and 689.14, Fla. Stat., F.S.A. providing that upon the creation of a life estate with the remainder over to the lineal descendants, the remainder shall be subject to open and to take in per stirpes lineal descendants of the life tenant who come into being during the life estate; and § 689.14 providing that the estate for life having been created in the first taker with remainder per stripes to the lineal descendants of the first taker. If the remainder fails for want of such remaindermen, it shall then vest in other remaindermen designated in the will, or, in lack of such other designation, then it shall revert to the donor or his heirs. The guardian ad litem thus contends that in light of the above statutes the remainder to the grandchildren is not defeated by the fact that no grandchildren were in being at the death of the testator. He contends that the time to ascertain whether or not there is a failure of such remaindermen is at the time of the death of the last surviving life tenant and not at the time of death of the testator.
"The contention of the Executrix that the children of the decedent take absolutely and in fee to the destruction of the interests of the grandchildren is based wholly upon the doctrine of destructibility of contingent remainders. This doctrine is in full force and effect in the State of Florida, the last decision the Supreme Court of Florida sustaining the doctrine being the case of Popp v. Bond, 158 Fla. 185, 25 So.2d 259 in which the Supreme Court of Florida said in referring to the case of Blocker v. Blocker, 103 Fla. 285, 137 So. 249:
"`This holding was predicated on the rule of the common law which is in effect in this state and provides in substance that contingent remainders may be defeated by destroying or determining the particular estate upon which they depend, before the contingency happens whereby they become vested. The contingency involved here was the adverse claim of prospective children of the life tenant. Under the rule as above stated, such contingent remainder was extinguished when the title of the infant remaindermen in being was merged with that of the life tenant * * * In addition to being supported by the rule of the common law, they (the cases cited in support of said rule) are supported by good logic. It is, of course, competent for the Legislature to prescribe a different rule.'
"The doctrine of destructibility of contingent remainders which has come down to us from the feudal law of England serves almost the sole function of defeating the intent of a testator attempting to dispose of his property by will. It has been said that in the past 300 years no Court or text-writer has ever said one word in its favor. The doctrine has nothing to do with intention. It always destroys the intention, because every testator intends the contingent remainder to take effect. See Destructibility of Contingent Remainders in Florida, 3 U.Fla.L.Rev. 319 (1950).
"The question to be determined by this Court is solely whether or not the doctrine applies to the facts of the instant case. It is the considered opinion and findings of this Court that the doctrine does not apply in this case. In the four comparative recent cases in which the Supreme Court of Florida has invoked the doctrine of revocability of contingent remainders, the subject matter of each case involves the title to real property. In this case, we are concerned only with the distribution of intangible personal property, to wit: money. It is true that the source of all, or the greater portion of this money was the sale of real property belonging to the decedent at the time of his death, but the sale resulted from a contract for sale entered into by the decedent during his lifetime. One *483 of the exceptions to the rule of destructibility of contingent remainders is that the rule does not apply to future interests in personalty. Abiss v. Burney, 17 Ch.D. 211 (C.A. 1881). In personalty there are no contingent interests in the strict sense, Gray, Rule Against Perpetuities, § 321 (4th ed. 1942).
"All remainders must be either vested or contingent. Washburn, in his work on Real Property (2 Washburn, Real Property, § 1551), says:
"`Thus, upon the grant of an estate to A, with the remainder to his children, he having none at the time, the remainder will, of course, be a contingent one. But the moment he has a child born, the remainder becomes vested as fully as if it had originally been limited to a living child.'
"There being no grandchildren of W. Carlton Rentz at the time of his death, the remainder interest of grandchildren as provided in his will is necessarily and obviously a contingent remainder. In the case by the Supreme Court of the United States in Doe [ex dem. Poor] v. Considine, 73 U.S. (6 Wall.) 458, 18 L.Ed. 869 (1868), we find the following proposition:
"`A. devises to B. for life remainder to his children but if he dies without leaving children remainder over, both the remainders are contingent, but, if B. afterward marries and has a child, the remainder becomes vested in that child, subject to open and let in unborn children, and the remainder over are gone forever. The remainder becomes a vested remainder in fee in the child as soon as the child is born, and does not wait for the parent's death, and, if the child dies in the lifetime of the parent, the vested estate in remainder descends to his heirs.'
"The foregoing rules appear to be in harmony with § 689.17, Fla. Stat., F.S.A. and seem to be covered in its entirety in an almost identical case reported by the Supreme Court of Arkansas in 1925. Jenkins v. Packington Realty Co., 167 Ark. 602, 268 S.W. 620 (1925). This case concerned a devise to a son and his wife for life with remainder to their children. There were no living children at the time of the death of the testator. But a child was born to the son and his wife after the death of the testator and during the period of the life estate. It was the contention of the appellant in that case that since the child was not born until after the death of the testator, this rendered the devise of the remainder void and that the title reverted to the heirs of the testator. This is exactly the contention of the executrix in this case. The Court there made the following comment: (Page 621)
"`* * * We think that the language used by the testator presents a case of a devise in remainder to a class of persons, whether in being at the time or not, and that the remainder vested immediately upon the coming into being of any one of that class, * * * In the present case there was no person in being coming within the class mentioned in the devise, and, in order to give any effect at all to the devise, it must be presumed that the testator intended to include after-born children of James Hayes Jenkins and his wife, Josephine. It is our duty, if it can reasonably be done from the language used, to give some effect to the devise, and to do so we must say that it was intended to include after-born children.'
"The Court further finds that the doctrine of the destructibility of contingent remainders does not apply in the instant case for the further reason that the life tenants have not transferred their life estate and their right of reversion to a third person. The fact that the merger which constitutes the destruction of the right of contingent remainders cannot take place by the same instrument at the same time and by the same person, constitutes a further *484 restriction on the operation of the Rule. That a reversion passing by intestacy from the testator to his minor children, and a life estate passing at the same time by will from the testator to his minor children does not merge and destroy contingent remainders even in real property until there is a subsequent transfer to a third person, was recognized by the Supreme Court of Florida in the case of Tankersley v. Davis, 128 Fla. 507, 175 So. 501, wherein it was held that where real property was given to daughter for life with remainder to her surviving children, that notwithstanding that she would take the fee in reversion and the life estate by virtue of the will, the principle in the Blocker case of destructibility of contingent remainders was not applicable and no destructibility occurred since the daughter had not transferred her reversion and life estate to a third person.
"The Court, in distinguishing the Tankersley case from the Blocker case, said:
"`* * * The life tenant and reversioner has made no conveyance of her two interests to a third party so as to create mergers to destroy the intermediate contingent estates. Without an elimination of the intermediate contingent estates there are no mergers, since all the estates in the lands flow from the original conveyance made by J.C. Bishop to each of his two daughters for life with contingent remainders. * * * In the instant case all the parties received their estates through conveyances from the grantor, their common ancestor, and merger by act of the parties has not occurred to extinguish intermediate estates.'
"The Court, therefore, finds that the instant case being an exception to the Rule of destructibility of contingent remainders because the subject matter hereof is personalty and not realty, and, secondly, because no merger has occurred by virtue of an act of the parties transferring the two interests of reversion and inheritance to a third party, that the intent of the testator in creating a life estate in his minor children with remainder over to his grandchildren must be given full force and effect notwithstanding the absence of a grandchild in whom the remainder could vest at the time of the testator's death.
"The Court further finds that the time for determining whether there is a failure of such remaindermen is at the time of death of the last surviving life tenant and adopts the rule and logic in the holding of the Court in the Jenkins v. Packington Realty Company case herein cited as being the proper construction and rule of law.
"The language of the Supreme Court of Florida in the case of Tankersley v. Davis above cited is likewise found to be controlling wherein the Court said (Page 505):
"`The intervening limitations between the first life estates and the final limitation to the "heirs in fee" of the surviving daughter after the death of such surviving daughter of the grantor, leaving no child or grandchild, prevents a merger until the intermediate estates are satisfied. The final limitation to the "heirs in fee" of the surviving daughter life tenant unites with the life estate of such surviving daughter sub-modo, opening, if necessary, to let in the intervening estates. 2 Minor's Institutes, 405; 11 Coke 80(a).'
"The Court being fully advised in the premises, it is now, therefore:
"ORDERED AND ADJUDGED that after the award and satisfaction of judgment of dower in behalf of the surviving spouse, the residual estate of the decedent, W. Carlton Rentz, be distributed to the children of the decedent, they to have and enjoy the income and profits therefrom, share and share alike for life, with remainder to the grandchildren of the decedent per stirpes."
Affirmed.