389 So.2d 235 (1980)
William G. LEWIS, As Executor of the Estate of Beulah Robinson Lewis, Appellant,
v.
Raleigh Travers GREEN, III; Jan Singleton Carter, William Lytle Schultz, and Doris Robinson Schultz, Appellees.
No. OO-185/T1-109.
District Court of Appeal of Florida, Fifth District.
September 24, 1980.
Rehearings Denied October 22, 1980.
*237 A. Graham Allen of Freeman, Richardson, Watson, Slade, McCarthy & Kelly, P.A., Jacksonville, for appellant.
J. Grover Henderson of Stein & Henderson, St. Marys, Ga., for appellees.
SHARP, Judge.
The plaintiffs, Raleigh Travers Green, III, Jan Singleton Carter, William Lytle Schultz, and Doris Robinson Schultz, sought a declaratory judgment interpreting their rights under the will of John S. Robinson. This is the second time this will has been construed,[1] and it will not be the last. The defendants are the Barnett Bank of St. Augustine, the trustee of the testamentary trust established by John S. Robinson's will, Margaret L. Dyer, William G. Lewis, and Rose Mae Francis Lewis Neville.[2] The co-executors of the estates of Rose Robinson Lewis and Beulah Robinson Lewis intervened in the suit. They claim that immediate declaratory relief is needed to determine the rights of the estates to inherit under the will, in order to properly administer the estates.[3] Additional defendants are Rose Gordon Neville and Richard Henry Neville, the adopted children of Rose Mae Francis Lewis Neville; and Georgia Mason Furnival, James R. Dyer, Richard L. Furnival, and Margaret Dyer Furnival, the adopted children of Margaret L. Dyer. A "Robinson Family Tree" follows to assist the reader and this court in understanding the relationships of these parties.

*238
 "ROBINSON FAMILY TREE"
 John S. Robinson (Dec.)
__________________________________________________________________________
 (Children) Beulah Robinson Lewis (Dec.)
 (Estate Intervened as[*])
 |
 |
 |
 |
 (Grandchildren) |
 |
__________________________________________________________________________
 Rose Mae John Robinson William G. Lewis[*]
 Francis Lewis (Dec.)
 Lewis Neville
 (Dec.) |
 |
 (Great | Grandchildren)
 |
 |
--------------------------------------
 Rose Gordon Richard Neville[*]
 Neville[*] (adopted)
 (adopted)
 Lizette Robinson (Dec.)
__________________________________________________________________________
 Rose R. Lewis (Dec.) John S. Robinson, Jr. (Dec.)
 (Estate Intervened as [*])
 | |
 | |
 | |
 | |
 | |
 | |
 | |
 ___________________ _____________________________
 Margaret L. Dyer[*] Doris Robinson Schultz[**]
 | |
 | |
 | |
 | |
 | |
 | |
 | |
 | |
 | |
 |__________________________________________________
 | Raleigh Travers Jan Singleton William Lytle
 | Green III[**] Carter[**] Schultz[**]
 |
 |
 |
 |
______________________________________________________________
 George Mason Richard L. James R. Margaret Dyer
 Furnival[*] Furnival[*] Dyer[*] Furnival[*]
 (adopted) (adopted) (adopted) (adopted)
(Dec.) = Deceased
[*] = Defendant
[**] = Plaintiff

There is no dispute about the facts in this case. John S. Robinson, a resident of Jacksonville, Florida, executed his will on April 27, 1910. He and his wife, Lizette, had two daughters, Beulah and Rose. Their son, John, had died in 1909. John left a widow, Florence L. Robinson, and a daughter, Doris. At the time of the testator's death in 1915, Doris was seven years old. Article III of the will provided Doris would receive a $3,000 bequest when she attained 21 years, and conditioned her inheritance under the will as follows:
I further direct that in the event Florence L. Robinson, the mother of my grand-daughter, Doris L. Robinson, shall die before my said grand-daughter, then it is my will and I desire that said grand-daughter shall be given in sole charge of one of my three first named trustees[4] and my said trustees shall provide for the maintenance, care and education of my said grand-daughter out of the income from my estate until she shall reach the age of twenty-one years, and she shall share in my estate as my other grand-children as hereinafter provided, but in *239 the event the said Doris L. Robinson shall not be given in charge of my said trustees by her mothers relatives, or she, herself, shall refuse to go into my said trustee's charge, then the said amount of three thousand ($3,000.00) dollars shall be the only amount she shall receive from my estate.
Florence died in 1917, leaving Doris in the care of maternal aunts. After the death of her grandfather, Doris visited her paternal grandmother every week until her grandmother died in 1924. As a teenager during the summers, Doris visited her Aunt Beulah and Aunt Rose in Virginia, spending two weeks with each. Neither Lizette nor the paternal aunts mentioned the condition in the will about Doris having to live with one of them to share in the estate. Nor did they ever ask or invite her to make her home with one of them. When Doris was nineteen she married and moved to Tampa with her first husband, Mr. Green.
The death of Lizette in 1924 triggered the first litigation concerning the construction of John Robinson's will. Doris filed a suit in 1929 to have her rights to income determined under the trust, her rights to the $3,000 bequest, and her rights to share in the estate as an heir. In Green v. Lewis, 113 Fla. 609, 151 So. 280 (1933), the Florida Supreme Court determined that Doris was entitled to receive one-third of her grandmother's share of the income from the trust during the existence of the trust by her "right of substitution."[5] Article V of the will provided that the trust would continue until twenty one years after the death of John's last surviving grandchild who was then living. All of the grandchildren (Rose Mae, John, William, Margaret, and Doris) were then living. Article IV of the will provided that the income of the trust would be paid 1/4th to Lizette, 1/8th to Beulah and 1/8th to Rose, or used proportionately for their benefits in the trustees' discretion. The Green court held that Article IV contained no conditions unmet by Doris which might prevent her from sharing the trust income by right of substitution.
Upon termination of the trust, Article VI of John Robinson's will provided:
[t]hen my estate shall be divided equally in the proportions to which their ancestors are entitled, among the surviving heirs of the issue of the beneficiaries herein named, provided however that no portion of my estate, except the special bequest of $3,000.00, shall go to my granddaughter, Doris L. Robinson, or her issue, unless the provisions of article three of this will shall have been strictly complied with.
The Green court refused to say who was entitled to distribution of the trust corpus when the trust terminates. "That will be a problem for those charged with the distribution when that time arrives." 151 So. at 272. It also expressly refused to decide whether or not the conditions imposed by Article III and Article VI were void because of being contrary to public policy.
It is contended here that conditions imposed by item III of the will are void because the same are contrary to public policy. We do not think it necessary to so hold ...
151 So. at 271 (Emphasis supplied).
Following the conclusion of the litigation in 1935, Doris signed a document acknowledging receipt of her $3,000.00 legacy under her grandfather's will.[6] She also executed *240 an assignment to her two paternal aunts, Beulah and Rose, of all of her "right, title and interest in the estate of John S. Robinson, deceased, whether as an heir at law of said decedent or a legatee or distributee under the will of said decedent, and whether said right, title and interest be it real or personal property, or otherwise ..." For this assignment Doris received $12,315.48.
This very complex case was currently prosecuted by the parties over a 3 year period. The lower court entered a declaratory judgment which answered four questions:
(1) Who are the present income beneficiaries of the trust?
(2) Who will receive the income when a now-living income beneficiary dies?
(3) When all of the income beneficiaries die, who will receive the income?
(4) Who will receive the corpus of the trust when the trust terminates?
The plaintiffs appeal from the judgment and some of the defendants cross-appeal. For reasons stated herein, we affirm the lower court in part, and reverse it in part. We amend the judgment to conform to this opinion.
Issue I: Who are the current income beneficiaries of the trust?
The Green case determined that Article IV of the will created cross-remainders[7] to the lineal descendants of Lizette, Beulah, and Rose, in proportion to their shares of the trust income of 1/4th, 1/8th, and 1/8th respectively. Doris was thus entitled to 1/3rd of Lizette's 1/4th share because she was the sole issue of one of Lizette's three children. Doris assigned this right to receive income from the trust to Rose and Beulah. We agree with the lower court's finding that this assignment was valid and binding.[8] The estates of Beulah and Rose or whatever heirs are entitled thereunder shall continue to receive Doris' fractional share of the trust income during Doris' lifetime.
We also agree with the lower court that upon the death of Doris, her lineal descendants will have the right to receive this fractional share of the income. Doris never had the power to convey or assign away the rights of her issue to share in the income after her death.[9] The identity of Doris' issue or descendants who will receive her share of the trust income cannot now be determined.[10] Any such person must survive Doris, and must be her issue or lineal descendant. In re Rentz' Estate, 152 So.2d 480 (Fla. 3d DCA 1963), cert. denied, 156 So.2d 859 (Fla. 1963); Dean v. Crews, 77 Fla. 319, 81 So. 479 (1919); 80 Am.Jur.2d Wills §§ 1409, 1415 (1975). The distribution should be per stirpes. Green v. Lewis, 113 Fla. 609, 151 So. 270 (1933); Rogers v. Atlantic Nat. Bank of Jacksonville, 371 So.2d 174 (Fla. 1st DCA 1979); § 732.611, Fla. Stat. (1979); § 732.104, Fla. Stat. (1979).
Beulah's fractional share of the trust income (1/8th plus 1/3rd of Lizette's 1/4th) should have been shared equally by her two surviving children, Rose Mae Francis Lewis Neville and William G. Lewis. Upon Rose Mae's death, the question arises as to whether her adopted children, Rose Gordon Neville and Richard Neville, are her "issue" or "lineal descendants" for purposes of sharing in the trust income. Relying on In re Hewetts Estate, 153 Fla. 137, 13 So.2d 904 (1943), and In re Levy's Estate, 141 So.2d 803 (Fla. 2d DCA 1962), the lower court held that the testator only intended persons in his blood line to inherit, and therefore adopted children would not receive the income as issue or descendants of their adopting parents. We disagree.
*241 There is no indication in the instrument that the testator considered the possibility that grandchildren might adopt great-grandchildren in the remote future, as happened in this case. The language of the will refers only to "issue" of deceased persons and their "direct descendants." The reference in the will to "deceased persons" encompassed the testator's children and their children:
In the event of death of either or any of the beneficiaries herein named [his daughters and wife] or of their children, [the grandchildren] taking by substitution after their death, I then direct that the proportion of the income of such deceased person or persons, be divided among the issue of such deceased person, and in the event such deceased person should have no living issue or direct descendants thereof ...
The question is thus: did the testator intend to include adopted children as the issue or descendants of his grandchildren, where the will and the evidence cast no light on his actual intention?
The better view is that adopted children are the issue and the lineal descendants of their adopting parents for purposes of inheriting under a will or trust instrument. In re Clancy's Estate, 159 Cal. App.2d 143, 323 P.2d 763 (2d DCA 1958); Merson v. Wood, 202 Va. 485, 117 S.E.2d 661 (1961); In re Will of Henderson, 64 Misc.2d 280, 314 N.Y.S.2d 766 (N.Y. Surrogate 1970); In re Thompson, 53 N.J. 276, 250 A.2d 393 (1969); In re Trusts Created Under Will of Adler, 30 Wis.2d 250, 140 N.W.2d 219 (1966). Courts look to the law of the applicable state at the time of termination of the prior life estate rather than the law at the time the will was written, or when the testator died, to determine the testator's intent to include or exclude adopted children. In re Estate of Moulton, 62 Cal. App.2d 1, 133 Cal. Rptr. 500 (4th DCA 1976). The explanation offered is that the testator must have known the laws of descent and inheritance would change over the duration of a long term trust.
In Florida, the legislature substantially revised the laws concerning adoption in current years. An adopted child is no longer the "heir" or "descendant" of the natural parent.[11] The adopted child is transformed by legislative fiat to become the heir, issue and descendant of the adopting parent as well as the other members of the adopting family. Section 732.108(1), Florida Statutes (1979), provides:
For the purpose of intestate succession by or from an adopted person, the adopted person is a lineal descendant of the adopting parent and is one of the natural kindred of all of the members of the adopting parent's family ...
Section 732.608, Florida Statutes (1979), provides:
Adopted persons ... are included in class gift[s] terminology and terms of relationship, in accordance with rules for determining relationships for purposes of intestate succession.
Section 63.172, Florida Statutes (1979), provides:
(1) A judgment of adoption ... has the following effect:
.....
(c) It creates the relationship between the adopted person and the petitioner and all relatives of the petitioner that would have existed if the adopted person were a legitimate blood descendant of the petitioner. This relationship shall be created for all purposes, including inheritance and applicability of statutes, documents, and instruments, whether executed before or after entry of the adoption judgment, that do not expressly exclude an adopted person from their operation or effect. (Emphasis supplied).
In view of the clear public policy expressed in the statutes of this state, there is no longer any reason to treat an adopted child differently than a natural child, for purposes of intestate or testate inheritance. Simon, Redfearn Wills and Administration in Florida, § 23.04 (5th Ed. 1977).
*242 The lower court relied upon In re Hewett's Estate, 153 Fla. 137, 13 So.2d 904 (1943). The issue in that case was whether or not an adopted child of a first cousin was a "descendant" of the decedent for purposes of intestate inheritance. The Court held that although section 731.30, Florida Statutes (1941)[12] made an adopted child the "lineal descendant" of its adopting parent, it did not make the adopted child the "lineal descendant" of the other members of the adopting family. Even if In re Hewett still has any validity, in view of the legislative changes,[13] it is not dispositive of this case, because the issue here is not whether the adopted children are issue or lineal descendants of John Robinson, but whether they are the issue or lineal descendants of Rose Mae, the testator's granddaughter, and their adopting parent. Under the 1885 adoption statute, as interpreted by the dictum in In re Hewett, the adopted children are Rose Mae's lineal descendants. First National Bank of Miami v. Bobcik, 132 So.2d 299 (Fla. 3d DCA 1961), cert. dismissed, 136 So.2d 343 (Fla. 1961). See also In re Estate of Carlton, 348 So.2d 896 (Fla. 4th DCA 1977), cert. dismissed, 378 So.2d 1212 (Fla. 1979).
Thus, we conclude that Rose Gordon Neville and Richard Neville will take the fractional share of the trust income formerly received by Rose Mae Francis Lewis Neville, by right of substitution.
Issue II-Who will receive the income when a now-living income beneficiary dies?
Issue III-When all of the income beneficiaries die, who will receive the income?
As stated under Issue I, until the trust terminates 21 years after the death of the survivor of William G. Lewis, Margaret Dyer, and Doris (the testator's grandchildren) the income of the trust will go to the issue or lineal descendants of Beulah, Rose and Lizette, per stirpes, according to the fractional shares stated in the will. The adopted children of Margaret Dyer or their issue will take her share. If William G. Lewis dies without issue or descendants, his share will pass to Rose Mae's issue. Only if there are no issue or descendants of any of John Robinson's three children, will the income revert over to the other children's issue or descendants; and only if there are no living issue or descendants of John Robinson's grandchildren, will there be a failure of the contingent remainder and therefore an intestate situation. However, with nine great-grandchildren in being, and at least 21 more years for this trust to run, the rights of inheritance on intestacy are much too speculative and remote a matter for this court to now determine.
Issue IV-Who will receive the corpus of the trust when the trust terminates?
This issue necessarily involves answering the question posed but not answered in the Green case: are Doris' issue banned from inheriting because of the failure of the condition in the will that she be raised by Lizette, Beulah or Rose Robinson after the death of her mother? The lower court held that the condition was vague and therefore void for uncertainty. The trial court said:
If the Court were to speculate that he [John Robinson] intended a legal guardianship of the person of Doris Robinson Schultz it was not within the power of the `mother's relatives' to appoint any trustee guardian. That authority was vested in the county judge's court and the appointment also depended upon the qualifications of the proposed guardian and the best interests of the child. There is no evidence whatsoever that any trustee made any effort to `take charge of Doris' or even recognize their responsibility in that regard. The fact that no one took any action is understandable. They didn't anymore know at that time what the testator intended by the condition [than] we do today.
*243 We affirm the lower court's ruling on this point.[14] Doris' surviving parent had the right to name a personal guardian for her child, or if she did not do so, a court, acting in the child's "best interest" had this responsibility. The condition in the will appears invalid because it violates public policy.[15] It also could have been held void and unenforceable because the persons for whose benefit the condition was imposed, the grandmother and the paternal aunts, chose not to insist upon Doris living with any one of them, and by not doing so, they benefited their own children and issue, to the detriment of Doris and her issue.[16] Finally, the condition was one that Doris could not have performed under the circumstances. She was a minor, and unaware of the condition. Her aunts and her grandmother never asked her to live with one of them. It was impossible for Doris to fulfill the condition. Since this contingency was obviously not foreseen by the testator, the condition was excused.[17]
John Robinson's will provides that the trust will continue for the life-times of his grandchildren plus 21 years. Three of his grandchildren are still living. When the trust finally terminates, his will provides that the trust property will be "divided equally in the proportions to which their ancestors are entitled, among the surviving heirs of the issue of the beneficiaries herein named ..." (Emphasis supplied). The lower court held that it is not now possible to determine who the beneficiaries of the trust corpus will be until the trust actually terminates. We agree.
A person's right to share in the distribution of the corpus of the trust depends on his surviving until the trust terminates, and being within the class of persons described by the testator as persons eligible to take the corpus.[18] No assignment or conveyance by Doris could have defeated the contingent remainder interest in her issue, because she could not possibly have a vested remainder interest in the trust corpus. By its terms, it would not vest in anyone until after her death plus at least 21 years. Dean v. Crews, 77 Fla. 319, 81 So. 479 (1919); 18 Fla.Jur.2d Descendant's Property §§ 404, 77. When the trust terminates, at least 21 years hence, that will be the time to determine the actual recipients of the trust corpus. We should do no more than suggest in a general way the identity of the potential class members.
The trust has suspended the vesting of the trust corpus for lives in being plus 21 years. We must, if possible, construe its provisions so as not to violate the "rule against perpetuities."[19] The term "heirs" as used in this trust cannot be given its "normal" meaning-those persons who would take the property of the "issue" of the beneficiaries by intestate succession[20] *244 because there can be no "heir" of a living person[21] and the trust must terminate and vest 21 years after the death of the last living grandchild. Thus we construe the word "heirs" as used in the will as meaning words of "limitation" as opposed to "words of purchase,"[22] and in this case synonymous with the word "issue." 95 C.J.S. Wills § 673 (1957).
The then surviving issue of John Robinson's three children are the potential members of the class. They will take their shares per stirpes,[23] based on 1/3rd to each line of issue. Should the issue of Beulah or Rose or John expire before the trust terminates, the other line or lines of issue would share equally the distribution of the expired line. As stated previously, the adopted children are includable in the potential class of descendants or issue of their adoptive parents. In re Estate of Moulton, 62 Cal. App.2d 1, 133 Cal. Rptr. 500 (4th DCA 1976); In re Carlton Estate, 348 So.2d 896 (Fla. 4th DCA 1977); cert. dism., 378 So.2d 1212 (Fla. 1979).
Since there are at least nine now living potential members of the class, the contingent remainder is not destructible,[24] and it would be premature for this court to speculate about the possibility of intestacy.[25] In any event we recognize, as did the lower court, that the law in effect when the trust terminates will control the ultimate determination of the trust beneficiaries. See 96 C.J.S. Wills § 395 (1957); Carnegie v. First National Bank of Brunswick, 218 Ga. 585, 129 S.E.2d 780 (1963); Commerce Trust Company v. Weed, 318 S.W.2d 289 (Mo. 1958); In re Estate of Evans, 31 Ill. App.3d 753, 334 N.E.2d 850 (1975). Annot., 79 A.L.R.2d § 1453 (1961); Annot., 139 A.L.R. § 1111 (1942); 80 Am.Jur.2d Wills § 1422 (1975).
AFFIRMED in part, MODIFIED in part.
COBB and FRANK D. UPCHURCH, Jr., JJ., concur.
NOTES
[1] Green v. Lewis, 113 Fla. 609, 151 So. 270 (1933).
[2] Rose died after the suit was filed in 1976, and her personal representative was substituted in the proceedings.
[3] The death of Rose Mae Francis Lewis Neville after this suit was filed and the assertions of the executors of the estate of Beulah and Rose that questions involving the trust must be answered now, in order to properly administer and close the estates, give jurisdiction to provide declaratory relief. Anderson v. Dimick, 77 So.2d 867 (Fla. 1955).
[4] The "first three named trustees" were Lizette, Rose, and Beulah.
[5] Upon the death of an income beneficiary, the will provided:

In the event of the death of either or any of the beneficiaries herein named, or of their children, taking by substitution after their death, then I direct that the proportion of the income of such deceased person or persons, be divided among the issue of such deceased person, and in the event such deceased person should have no living issue or direct descendants thereof, then I direct that the proportion of such beneficiary or beneficiaries shall be divided equally among the surviving beneficiaries in equal proportion.
For those legal scholars who recall their studies of "future interests" this is technically a cross-remainder to the issue or lineal descendants of Lizette, Beulah and Rose. 80 Am.Jur.2d Wills § 1191 (1975).
[6] Clearly she had been entitled to receive this legacy, if nothing more, four previously when she became 21 years old.
[7] 80 Am.Jur.2d Wills § 1191 (1975).
[8] In re Francis' Estate, 153 Fla. 360, 14 So.2d 803 (Fla. 1943); Ferrera v. United States, 424 F. Supp. 888 (S.D.Fla. 1976); 10 Fla.Jur. Descent & Distribution § 90 (1973).
[9] Dean v. Crews, 77 Fla. 319, 81 So. 479 (1919); 19 Fla.Jur.2d Descendants Property §§ 404, 77 (1980); Simon, Redfearn Wills and Administration in Florida, § 12.18 (5th Ed. 1977).
[10] In re Estate of Evans, 31 Ill. App.3d 753, 334 N.E.2d 850 (1975). 95 C.J.S. Wills §§ 692, 695 (1957). Arnold v. Wells, 100 Fla. 1470, 131 So. 400 (1930). 28 Am.Jur.2d Estates § 276 (1966). 80 Am.Jur.2d Wills § 1434 (1975).
[11] § 732.108(1), Fla. Stat. (1979).
[12] The court said this statute was based on the first adoption statute in Florida of 1885.
[13] § 732.108(1), Fla. Stat. (1979); § 732.608, Fla. Stat. (1979). In re Levy's Estate, 141 So.2d 803 (Fla. 2d DCA 1962) was clearly "overruled" by § 732.108(1), Fla. Stat. (1979).
[14] The decision of the trial court is cloaked with a presumption of validity and should not be overturned absent an abuse of discretion. Herzog v. Herzog, 346 So.2d 56 (Fla. 1977); Shaw v. Shaw, 334 So.2d 13 (Fla. 1976); Greenwood v. Greenwood, 251 So.2d 665 (Fla. 1971); Cohen v. Mohawk, Inc., 137 So.2d 222 (Fla. 1962).
[15] 80 Am.Jur.2d Wills §§ 1563, 1564 (1975). See Billings v. Marshall Furnace Co., 210 Mich. 1, 177 N.W. 222 (1920).
[16] Annot., 39 A.L.R.2d 531, § 13 (1955); Lange v. Houston Bank & Trust Co., 194 S.W.2d 797 (Tex.Civ.App. 1946); In re Trybom's Will, 277 N.Y. 106, 13 N.E.2d 596 (1938); Guilliams v. First National Bank of Leesburg, 229 So.2d 633 (Fla. 2d DCA 1969) (dictum).
[17] Annot., 39 A.L.R.2d 522, §§ 4, 5 (1955); Annot., 35 A.L.R.2d 388 (1954); Annot., 160 A.L.R. 633 (1946).
[18] § 732.514, Fla. Stat. (1979); 18 Fla.Jur.2d Descendant's Property §§ 406, 397; Simon, Redfearn Wills and Administration in Florida, §§ 12-18, 11.06 (5th Ed. 1977); 80 Am.Jur.2d Wills, §§ 1408, 1409, 1415, 1434 (1975); 96 C.J.S. Wills, §§ 692, 695 (1952). Arnold v. Wells, 100 Fla. 1470, 131 So. 400 (1930); Dean v. Crews, 77 Fla. 319, 81 So. 479 (1919); Paul v. Frierson, 21 Fla. 529 (1885).
[19] Reimer v. Smith, 105 Fla. 621, 142 So. 603 (1932), Simon, Redfearn Wills and Administration in Florida, § 13.09 (5th Ed. 1977); § 689.22 Fla. Stat. (1979).
[20] 80 Am.Jur.2d Wills § 1207 (1975); Simon, Redfearn Wills and Administration in Florida, § 12.17 (5th Ed. 1977); 26A C.J.S. Descent & Distribution § 19 (1956). Arnold v. Wells, 100 Fla. 1470, 131 So. 400 (1930); Reimer v. Smith, 105 Fla. 671, 142 So. 603 (1932).
[21] 26A C.J.S. Descent and Distribution § 61 (1956); 95 C.J.S. Wills § 678 (1957).
[22] Reimer v. Smith, 105 Fla. 671, 142 So. 603 (1932); Storey v. First National Bank & Trust Co., in Orlando, 115 Fla. 436, 156 So. 185 (1934).
[23] § 732.611, Fla. Stat. (1979) and § 732.104, Fla. Stat. (1979). In re Davol's Estate, 100 So.2d 188 (Fla. 3d DCA 1958). See Rogers v. Atlantic Nat'l. Bank of Jacksonville, 371 So.2d 174 (Fla. 1st DCA 1979).
[24] In re Rentz' Estate, 152 So.2d 480 (Fla. 3d DCA 1963), cert. denied, 156 So.2d 859 (Fla. 1963).
[25] Annot., 132 A.L.R. 1069 (1941).