**Jose Diaz FERRERA, Plaintiff,**

v.

**The UNITED STATES of America et al., Defendants.**

**No. 76–1036–Civ–SMA.**

United States District Court, S. D. Florida.

Dec. 28, 1976.

Juan E. Acosta, Laurence A. Wanshel, Carlos L. De Zayas, Miami, Fla., for plaintiff.

Robert W. Rust, U. S. Atty., Patricia Jean Kyle, Asst. U. S. Atty., Miami, Fla., Jonathan B. Smith, Atty., Dept. of Justice, Washington, D. C., for defendants.

MEMORANDUM OPINION

ARONOVITZ, District Judge.

This case is before the Court on the defendants' motion to dismiss or, in the alternative, for summary judgment.

On July 8, 1963, the Secretary of the Treasury, through the Director of the Office of Foreign Assets Control, promulgated the Cuban Assets Control Regulations, 31 C.F.R. Part 515. Those Regulations generally prohibit any transfer of American-located assets in which the Cuban government or Cuban nationals have any interest.

Manuel Diaz Ferrera died intestate in Cuba in October of 1973. He was survived by eight brothers and sisters, one of whom is the plaintiff herein. Five of those heirs are Cuban nationals residing in Cuba, two presently reside in Puerto Rico and the plaintiff is a lawfully admitted alien residing in the United States. After the decedent's death, the five Cuban heirs and the two Puerto Rican heirs signed documents by which they transferred and assigned their interests in the American-located assets of the decedent's estate to the plaintiff. Those assets consist of the balances in two accounts in the Pan American Bank of Miami, which total approximately $7315.01.

The plaintiff herein petitioned the Circuit Court for Dade County, Florida, for an ORDER OF ADMINISTRATION UNNECESSARY and such an order was entered on May 28, 1975. That order adjudged and decreed that the eight surviving siblings of the decedent were his heirs and further decreed that all assets of the estate be distributed to the plaintiff herein. Plaintiff then applied to the Department of the Treasury, through the Federal Reserve Bank of New York, for a license unblocking the estate and releasing it to the plaintiff; that application was denied. This civil action was then brought by the plaintiff, seeking an Order directing the Treasury Department to license the transfer of the estate to the plaintiff.

The Cuban Assets Control Regulations prohibit, unless licensed, transfers of property in which the Cuban government or

Cuban nationals have any interest. 31 C.F.R. ¶ 515.201.[1] The validity of such freezing of assets of foreign countries and their nationals has often been recognized by the courts. See, *e. g., Propper v. Clark*, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949); *Nielsen v. Secretary of Treasury*, 137 U.S. App.D.C. 345, 424 F.2d 833 (1970); *Cheng Yih-Chun v. Federal Reserve Bank, et al.*, 442 F.2d 460 (2nd Cir. 1971); *Teague v. Regional Commissioner of Customs*, 404 F.2d 441 (2nd Cir. 1968), *cert. denied*, 394 U.S. 977, 89 S.Ct. 1457, 22 L.Ed.2d 756 (1969).

Section 515.407 of the Regulations interprets section 515.201, *supra*, as prohibiting "all transactions incident to the administration of the blocked estate of a decedent, including . . . distribution to the beneficiaries." A "blocked estate of a decedent" is defined as any decedent's estate in which a designated national has an interest and a person is deemed to have an interest in a decedent's estate if he was the decedent or is an heir. 31 C.F.R. ¶ 515.327.

Section 515.327 was considered by the Court of Appeals in *Real v. Simon*, 510 F.2d 557 (5th Cir. 1975), *rehearing denied*, 514 F.2d 738 (5th Cir. 1975). In that case all of the heirs of the Cuban decedent had emigrated to, and resided in, the United States, and sought the unblocking of the American-located assets of the Cuban decedent. The Court of Appeals held that ascribing an interest in the estate to the decedent, and blocking the estate on the basis of that interest alone, was without support in either the language or the purpose of the Trading with the Enemy Act. That conclusion was reached by the Court of Appeals after it considered the language of the statute under which the Regulations were promulgated, 50 U.S.C. App. ¶ 5(b)(1)(B), which applies to "any property in which any foreign country or a national thereof has any interest" (*Real, supra*, at 510 F.2d 562) and the purposes behind the Trading with the Enemy Act and the Cuban Assets Control Regulations.

The plaintiff relies upon the *Real* decision in arguing that the estate of Manuel Diaz Ferrera should be released to him. However, *Real* does not support the plaintiff in this case because the court's conclusion there was dependent upon total lack of a Cuban interest other than that of the decedent. As the Court of Appeals noted:

Involved are three American citizens and one lawfully admitted resident alien who are the sole survivors of a deceased Cuban national, and who claim ownership of securities held in the United States. There is no contention by the United States that the Cuban government has any right or claim to this property. 510 F.2d 561. [Footnote omitted].

\* \* \* \* \* \*

If neither the government of Cuba nor any person in Cuba has any interest or claim to the blocked property, the Trading with the Enemy Act would be inapplicable . . . But this prerequisite is satisfied in this case if, and only if, the regulation may validly hold that the decedent, Urbano Real, retains an interest in his estate after his death, since every other person with an interest in the estate resides in the United States. 510 F.2d 562.

In the case at bar, however, there are Cuban heirs who presently reside in Cuba. That fact is clear from the ORDER OF ADMINISTRATION UNNECESSARY, filed as Exhibit A to the Complaint herein. That order adjudged that the decedent had eight surviving heirs, five of whom presently reside in Cuba.

After the death of Manuel Diaz Ferrera, but prior to the entry of the ORDER OF ADMINISTRATION UNNECESSARY, the five Cuban heirs assigned their interests in the Cuban decedent's estate to the plaintiff. Plaintiff relies upon those assignments and the ORDER OF ADMINISTRATION UNNECESSARY in arguing that there is no Cuban interest, other than that of the decedent, to justify the continued blocking of

---

1. This section effectively blocked those assets of the plaintiff's decedent contained in his accounts in the Pan American Bank of Miami on July 8, 1963.

the decedent's American-located estate. Those assignments are, however, prohibited by the Regulations, since the Cuban heirs are Cuban nationals. Section 515.302. *Cf. Cheng Yih-Chun v. Federal Reserve Bank, et al., supra.*

Plaintiff further argues that there was no "transfer" to the plaintiff from the Cuban heirs because no interest in the estate vested in them prior to the entry of the probate court's order, which ordered distribution of the entire estate to the plaintiff, thereby extinguishing all interests other than those of the plaintiff. However, the order of the Florida probate court adjudged that the decedent was survived by eight heirs, five of whom are Cuban nationals. It decreed distribution to the plaintiff in apparent reliance upon the assignments by the five Cuban heirs and the two Puerto Rican heirs to the plaintiff.[2]

The Supreme Court has recognized that state court litigation may settle disputes among claimants to blocked property. Such adjudications cannot, however, transfer blocked assets. *Propper v. Clark, supra,* at 337 U.S. 483–486, 69 S.Ct. 1333; *Zittman v. McGrath,* 341 U.S. 446, 71 S.Ct. 832, 95 L.Ed. 1096 (1951). The Florida probate court may, thus, adjudicate the interest of the plaintiff vis-a-vis the Cuban heirs but cannot effect the unblocking of the assets. *Cf. United States v. Harrison County Mississippi,* 399 F.2d 485, 491 (5th Cir. 1968), *cert. denied,* 397 U.S. 918, 90 S.Ct. 925, 25 L.Ed.2d 99 (1970).

In *Real* the Court of Appeals recognized that any interest of Cuban heirs may well have altered its decision in that case:

> If one of Urbano Real's heirs presently resided in Cuba, there would be an interest of a foreign national in the blocked account which might, under the *Nielsen*

rationale, prevent transfer of any part of the blocked assets. *Real, supra,* at 510 F.2d 561.

The Court in *Nielsen v. Secretary of Treasury, supra,* did not ignore the Cuban corporate entity or order the release of the interests of unblocked shareholders. Here, too, the entity of the Cuban decedent's estate, in which living Cuban nationals have an interest, must remain blocked.

The Court of Appeals was careful to restrict its holding in *Real* to the facts before it—the lack of any Cuban interest in blocked property other than that of the Cuban decedent. Were this court to extend that ruling to validate the transfers urged by the plaintiff herein, the effectiveness of the Regulations would be seriously undermined because it would allow Cuban nationals to dispose of American-located assets to unblocked individuals who, in turn, could seek a judicial order requiring the licensing of such transfers. The intent of the Trading with the Enemy Act, as implemented by the Regulations, would be nullified.

There is no genuine issue as to any material fact in this case. For the reasons set forth above, defendants are entitled to judgment as a matter of law. Therefore, the defendants' motion for summary judgment is granted.

---

**2.** Plaintiff argues that, under Florida law at the time of the death of the decedent, no interest vested in the heirs because title vests in the decedent's personal representative upon his death. *Jones v. Federal Farm Mortgage Corporation,* 132 Fla. 807, 182 So. 226 (1938). However, see *Coral Gables First National Bank v. Hart,* 155 Fla. 482, 20 So.2d 647, 649 (1945); and *In re Slawson's Estate,* 41 So.2d 324, 326 (Fla.1949). Regardless of whether title vested in the Cuban heirs at the decedent's death (prior to the entry of the probate court's order), an assignable interest vested at that time. *In re Francis' Estate,* 153 Fla. 360, 14 So.2d 803, 807–808 (1943). That interest is sufficient, under section 515.201, *supra,* to subject the assets at issue to blocking by the Treasury Department.