# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00365-CV

**Mateo Cortez, as Representative of the Estate of Deborah Cortez, Appellant**

**v.**

**Sandra Flesher Brown, Charlotte Flesher Ash, Charlene Flesher Johnston, Connie Lou Keith Barry, Randall Wayne Davis, Virginia Villers, Charles Roberts, Lisa A. Smith, Patricia Chapman, Betty J. Marks Webb, James Berl Marks, Linda Murray, Thomas Wayne Marks, and Donald Leman Whited, Appellees**

## FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
## NO. C-1-PB-16-002348, HONORABLE GUY S. HERMAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Mateo Cortez, as Representative of the Estate of Deborah Cortez, filed a notice of appeal complaining of the trial court's amended final judgment, which granted summary judgment in favor of appellees Sandra Flesher Brown, Charlotte Flesher Ash, Charlene Flesher Johnston, Connie Lou Keith Barry, Randall Wayne Davis, Virginia Villers, Charles Roberts, Lisa A. Smith, Patricia Chapman, Betty J. Marks Webb, James Berl Marks, Linda Murray, Thomas Wayne Marks, and Donald Leman Whited,[1] and assessed sanctions against Cortez's attorneys William Brotherton and the Brotherton Law Firm. As explained below, Cortez's issues related to the sanctions order,

---

[1] Three additional parties were aligned with appellees in the underlying proceeding and were named as appellees in Cortez's original notice of appeal—Michael Ray Whited, Terry Lee Whited, and Sherry Lynn Whited Salsbury. Those parties were not named in his amended notices of appeal and thus do not appear as parties in this appeal.

in the absence of Brotherton, are not properly before us, thus we will limit our consideration to Cortez's other complaints. We will affirm the trial court's amended final judgment.

**Motion for Leave and Sanctions Order**

Cortez has filed a motion for leave to amend his notice of appeal, seeking to include Brotherton and his law firm as appellants. Because Cortez's motion affects whether we may consider one of his appellate issues, we consider that motion first.

The trial court originally signed an order granting summary judgment in favor of appellees and an order severing Cortez's claims against appellees into a new cause number. Appellees then filed a motion seeking sanctions against Brotherton and his law firm, asserting he had filed "baseless claims" that lacked legal merit and that "were brought for an improper purpose, namely to increase the costs of litigation for the Third Party Defendants and to gain leverage in pending litigation" with another party. *See* Tex. Civ. Prac. & Rem. Code § 10.001 (person who signs pleading or motion must certify to his "best knowledge, information, and belief, formed after reasonable inquiry," that document is not presented for improper purpose such as unnecessary delay or increase in litigation costs and that each claim or legal contention "is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"). Following a hearing, the trial court signed an Amended Final Judgment and an Order on Third Party Defendants' Motion to Modify Judgment to Include Sanctions Award, explaining that it was assessing about $65,000 in sanctions against Brotherton and the Brotherton Law Firm because Brotherton had filed documents that included frivolous claims.

2

Thirty days later, Brotherton filed a notice of appeal on behalf of Cortez, stating that Cortez "desires to appeal the amendment to the final judgment as it is reflected in its *Order on Third Party Defendants' Motion to Modify Judgment to Include Sanctions Award* . . . and its *Amended Final Judgment*," as well as "the denial of *Intervenor's Special Exceptions to Third Party Defendants' Traditional and No Evidence Motion for Summary Judgment* signed . . . and subsequently severed" into the new cause number.  More than two months later, Brotherton filed an amended notice of appeal on behalf of Cortez, stating that Cortez:

> desires to appeal all the orders made by this Court in this matter, including but not limited to, the *Order Denying Intervener's Special Exceptions to Third Party Defendants' Traditional and No Evidence Motion for Summary Judgment*, the *Order Granting Third Party Defendants' Traditional and No Evidence Motion for Summary Judgment*, and the *Order on Third Party Defendants' Motion to Sever* . . . as well as the amendment to the final judgment as it is reflected in the Court's *Order on Third Party Defendants' Motion to Modify Judgment to Include Sanctions Award* and its *Amended Final Judgment* . . . .

In the docketing statement, also signed and filed by Brotherton on Cortez's behalf, Cortez was the only named appellant.  Similarly, an appellant's brief was filed for Cortez, signed by Brotherton on behalf of himself and two other lawyers as "Attorneys for Appellant."  About a month after Cortez filed his brief, appellees filed a motion asserting that Cortez lacked standing to complain about the sanctions award because the sanctions were assessed against Brotherton and his law firm, not against Cortez.  Shortly thereafter, Cortez filed his motion for leave to amend the notice of appeal, stating that "[t]hrough inadvertence and mistake, the notice of appeal does not expressly name William Brotherton and the Brotherton law firm as appellants."

3

Rule 25.1 provides that any party who seeks to alter the trial court's judgment must file a notice of appeal and that we may not grant relief to a party who does not file a notice of appeal. Tex. R. App. P. 25.1(c). A party may file an amended notice of appeal correcting an omission or defect at any time before the appellant's brief is filed, but after the brief is filed, "only on leave of the appellate court and on such terms as the court may prescribe." *Id*. R. 25.1(g). Cortez seeks to amend his notice of appeal under rule 25.1(g), and appellees oppose his motion.

Cortez notes that the supreme court has stated that its "consistent policy has been to apply rules of procedure liberally to reach the merits of the appeal whenever possible." *Warwick Towers Council of Co-Owners ex rel. St. Paul Fire & Marine Ins. Co. v. Park Warwick, L.P.*, 244 S.W.3d 838, 839 (Tex. 2008).[2] He argues that we should therefore view the original notices of appeal as a bona fide attempt to invoke our jurisdiction and should not dismiss the claim due to a procedural technicality. However,

---

[2] In *Warwick Towers Council of Co-Owners ex rel. St. Paul Fire & Marine Insurance Co. v. Park Warwick, L.P.*, the insurance company filed a notice of appeal in its insured's name, failing to mention itself in the notice. 244 S.W.3d 838, 839 (Tex. 2008). However, the docketing statement, briefing, and all other appellate documents identified the appellant as the insured "by and through" the insurance company. *Id*. The court of appeals refused to consider the merits of the appeal because the insurance company was not named as an appellant in the notice of appeals, but the supreme court reversed, holding that the insurance company "made a bona fide attempt to appeal by filing the notice of appeal in the name of its insured, and by listing its interest in the docketing statement and other appellate pleadings." *Id.* Our case presents a different scenario—none of the appellate filings included Brotherton or his law firm as named appellants, including the notice of appeal, docketing statement, and appellant's brief. Cortez's brief does attack the sanctions award, but only on his own behalf—it does not indicate that Brotherton himself was appealing from the sanctions. *See Bahar v. Baumann*, No. 03-09-00691-CV, 2011 WL 4424294, at *2-3 (Tex. App.—Austin Sept. 23, 2011, pet. denied) (mem. op.). Not until the issue was noted by appellees did Brotherton seek to be included as an appellant or indicate that he himself was complaining of the sanctions order.

4

When an attorney and his client are both sanctioned, and both wish to appeal the sanctions order, this Court and other courts of appeals have held that it is essential that both the client and the attorney be named as appellants in the notice of appeal. This is because a client lacks standing to appeal sanctions imposed on her attorney. *This rule should apply with even greater force in cases like this one where only the attorneys are sanctioned.*

*Bahar v. Baumann*, No. 03-09-00691-CV, 2011 WL 4424294, at *2 (Tex. App.—Austin Sept. 23, 2011, pet. denied) (mem. op.) (citations omitted, emphasis added). Similarly, in *Sluder v. Ogden*, a case in which both the client and his attorney were sanctioned, we considered whether the attorney, who had not filed a notice of appeal but who was identified as an appellant in appellant's brief, could complain of the sanctions order. No. 03-10-00280-CV, 2011 WL 116058, at *2 (Tex. App.—Austin Jan. 13, 2011, pet. denied) (mem. op.). We "agree[d] with other courts of appeals that have held that an attorney who wishes to appeal sanctions must either join in a party's notice of appeal or file his own" and held that because the attorney had not filed a notice of appeal, we would only review the sanctions order as it applied to the client. *Id*.

After the trial court signed its Amended Final Order, Cortez filed a notice of appeal stating that he wished to appeal from "the amendment to the final judgment as it is reflected in its *Order on Third Party Defendants' Motion to Modify Judgment to Include Sanctions Award . . .* and its *Amended Final Judgment*." He then filed an amended notice of appeal stating that he wished to appeal "all the orders made by this Court in this matter," including the orders granting summary judgment and the amended final judgment. Nowhere in those notices is there an indication that Brotherton wished to complain of the sanctions order. Nor was Brotherton listed as an appellant on the docketing statement, the brief, or any other appellate filing. Not until Cortez's brief was filed

5

did it become apparent that Cortez was seeking to complain about the trial court's determinations of Brotherton's conduct. Cortez did not seek to amend his notice of appeal to add Brotherton as an appellant until almost two months after filing his brief, and only in response to appellees' noting Cortez's lack of standing. If Cortez had only complained of the sanctions order, we would, under our precedent noted earlier, determine that he lacked standing and dismiss the appeal. *See, e.g.*, *Bahar*, 2011 WL 4424294, at \*2-4. We see no reason why we should grant more leniency here, where Cortez has raised issues that he does have standing to bring.

The facts presented here are more similar to those in *Bahar* and *Sluder* than in *Warwick Towers*.[3] *Compare id.*; *Sluder*, 2011 WL 116058, at \*2, *with Warwick Towers Council of Co-Owners ex rel. St. Paul Fire & Marine Ins. Co. v. Park Warwick, L.P.*, 244 S.W.3d 838, 839 (Tex. 2008). Further, although Cortez urges that we should determine that he has standing "because

---

[3] *See also Ugwa v. Ugwa*, No. 05-16-01116-CV, 2018 WL 2715405, at \*2 (Tex. App.—Dallas June 6, 2018, no pet.) (mem. op.) (because "the only notice of appeal in the record was filed solely by Deborah," court lacked jurisdiction over other party's appeal and only considered Deborah's appeal); *In re Estate of Curtis*, 465 S.W.3d 357, 365-66 (Tex. App.—Texarkana 2015, pet. dism'd) (when original notice of appeal named only president of ranch but amended notice named both president and ranch, court declined to hold that "a separate legal entity's right of appeal was preserved merely by an informational tag following counsel's signature on the notice of appeal" and held that ranch's attempt to appeal was untimely); *Berger v. Flores*, No. 03-12-00415-CV, 2015 WL 3654555, at \*4 (Tex. App.—Austin June 12, 2015, no pet.) (mem. op.) (because only client filed notice of appeal, court lacked jurisdiction over sanctions awarded against attorney and addressed sanctions only as they related to client); *Delesandri v. Rojay, LLC*, No. 11-10-00236-CV, 2012 WL 4465361, at \*1 (Tex. App.—Eastland Sept. 20, 2012, no pet.) (mem. op.) (because attorney filed notice of appeal on client's behalf, which stated that client "desires to appeal," but did not join as appellant in notice of appeal, court limited consideration to issues as they related to client); *Benavides v. Knapp Chevrolet, Inc.*, No. 01-08-00212-CV, 2009 WL 349813, at \*3 (Tex. App.—Houston [1st Dist.] Feb. 12, 2009, no pet.) (mem. op.) (because only client filed notice of appeal, not attorney or insurance carrier, court considered issues only as applied to client); *Williams v. Colthurst*, 253 S.W.3d 353, 367 (Tex. App.—Eastland 2008, no pet.) (because notice of appeal did not list sanctioned attorney as appellant, tenants lacked standing to attack sanctions order).

his interests are gravely prejudiced" by the sanctions order, we decline Cortez's invitation to part with our precedent on this issue and hold that Cortez lacks standing to complain of the sanctions assessed against his attorney. *See Bahar*, 2011 WL 4424294, at \*2-3; *Sluder*, 2011 WL 116058, at \*2. Brotherton was obligated to file his own notice of appeal in order to complain about the sanctions assessed against him and his law firm, not against Cortez. *See Bahar*, 2011 WL 4424294, at \*2-4. We deny Cortez's motion for leave to file an amended notice of appeal and decline to consider the arguments made in Cortez's brief related to the sanctions order against Brotherton and his law firm.

**Factual and Procedural Background**

This case concerns a trust first established by William and Phyllis Short in 1991 and then amended and restated in 2000 ("the Trust"). The Shorts had one child, Deborah, who married Cortez in 1996. Appellee Linda Murray is one of the Shorts' nieces, and she was named as co-successor trustee, along with Deborah. The other appellees are the Shorts' nieces and nephew and their children. The Trust provided that upon the Shorts' deaths, if Deborah was living and competent, she was to receive a $50,000 distribution; if Deborah was not living and competent, the gift would lapse. The Trust further provided that it would continue for Deborah's lifetime, allowing her to take distributions for her own needs, and that upon her death, any remaining assets would be divided among the Shorts' heirs.

William died in January 2002, and Phyllis died in 2011. Upon their respective deaths, their estates were added to the Trust estate. When Phyllis died, Deborah, as co-trustee, made the $50,000 distribution to herself. In December 2011, Deborah died intestate—Cortez was her sole

7

heir, and Murray became the sole trustee. According to Murray's allegations in the trial court, several months after Deborah's death, Murray discovered that Cortez had deposited about $62,000 in Trust assets into his own account. She asked him to return the assets, and he did so. After Murray looked further into the Trust documents, she concluded that Deborah and Cortez had misappropriated Trust assets and that Cortez had committed forgery. Murray sued Cortez in his individual capacity in Travis County in the underlying proceeding, asserting claims for conspiracy and conversion and under the Texas Theft Liability Act, *see* Tex. Civ. Prac. & Rem. Code §§ 134.001-.005.

Several months later, Cortez filed a petition in intervention in his capacity as representative of Deborah's estate, seeking declarations that when Deborah's mother Phyllis died, Deborah was the only beneficiary of the Trust and as such was entitled to the balance of the Trust's assets; that the Trust terminated upon Phyllis's death because Deborah was the only beneficiary and was more than thirty-five years old; and that the Trust's assets therefore became Deborah's assets and passed to her estate. He also asserted a claim for breach of fiduciary duty against Murray in her capacity as trustee.

About five months after Cortez filed his petition in intervention, Murray filed another suit in West Virginia in her capacity as trustee.[4] She named Cortez and appellees, including herself in her individual capacity, as defendants and sought an ordering directing the distribution of the Trust's assets to anyone determined to be an heir. Appellee Connie Barry filed a motion for summary judgment in the West Virginia case, arguing that Cortez had no right to the Trust's assets.

---

[4] According to Murray's petition, the majority of the potential heirs live in West Virginia.

8

The trial court agreed and signed an order in September 2016 rejecting Cortez's argument that he was the sole beneficiary of the Trust, decreeing that he had no interest in the Trust or the Trust's assets, dismissing him as a party to the West Virginia case, and ruling that the remaining Trust assets were to be divided between appellees as the Shorts' heirs.

Meanwhile, in the underlying Travis County case, through various amended pleadings, appellees, including Murray in her individual capacity as a potential heir under the Trust, were named as third-party defendants by Cortez as representative of Deborah's estate. The trial court eventually granted appellees' motion for summary judgment, dismissing Cortez's claims against appellees as "to any assets of [the Trust] other than his claim for undistributed income from the Trust during the life of Deborah Cortez," and stating that the summary judgment "has no effect on Mateo Cortez's breach of fiduciary duty against Linda Murray, in her capacity as trustee of the Trust." The trial court also granted appellees' motion to sever, which Cortez opposed, severing Cortez's claims against appellees into a new cause number. The order provided, "Included in the claims to be severed are any and all claims that Mateo Cortez, in his individual capacity or in his capacity as personal representative of the Estate of Deborah Cortez, has to any assets of [the Trust], other than his claim for undistributed income from the Trust during the life of Deborah Cortez." The trial court later signed an Amended Final Order, giving the same explanation of which claims were dismissed.

### Granting of Summary Judgment

Cortez, in his capacity as representative of Deborah's estate, complains both of the order granting summary judgment and of the severance order. We first turn to the propriety of the trial court's granting summary judgment in favor of appellees. Our analysis begins, of course, with

9

the language of the Trust, which specifies that it is governed by Florida law.[5]  The relevant portion

of the Trust is Article VIII, "Final Distribution of Trusts," which reads as follows:

> The trustee shall administer the remainder of the Credit Shelter Trust and the remainder of the trust share of the second spouse to die as if it were a single trust ("consolidated trust estate").
>
> A. Specific Distributions.  The trustee shall make the following specific distributions of cash:
>
>> 1. Charitable gifts.  The trustee shall distribute the lesser $10,000 or 10% of the principal of the consolidated trust estate to the following churches:
>>
>>> (a) Sixty percent (60%) to the STOUT MEMORIAL UNITED METHODIST CHURCH located in Parkersburg, West Virginia;
>>>
>>> (b) Twenty percent (20%) to the GRACE UNITED METHODIST CHURCH located in Cape Coral, Florida; and
>>>
>>> (c) Twenty percent (20%) to the FAITH UNITED METHODIST CHURCH located in Austin, Texas.
>>
>> 2. Cash Distribution to Deborah.  If our daughter, DEBORAH A. CORTEZ, is living and legally competent, the trustee shall distribute to her the sum of fifty thousand dollars $50,000.00, as soon as practicable after the death of the second one of us to die.  If Deborah is not then living or is not legally competent, then this gift shall lapse, and the remainder of the trust estate shall be administered as provided below.

---

[5]  The standards applied in reviewing a trial court's granting of summary judgment are well established—we take as true all evidence favorable to the non-movant, indulging reasonable inferences and resolving doubts in his favor. *Community Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017).  If the court does not specify its grounds for granting summary judgment, we will affirm if any of the asserted grounds are meritorious.  *Id.*  If the movant asserts both no-evidence and traditional grounds, we first review the no-evidence assertions and affirm unless the non-movant produced more than a scintilla of evidence on the challenged elements. *Id.* at 680-81; *see* Tex. R. Civ. P. 166a(i).  In reviewing a traditional summary judgment, we ask whether the movant showed that no genuine issue of material fact existed and that it was entitled to judgment as a matter of law.  *Hansen*, 525 S.W.3d at 681.

B. Continuing Trust for Deborah. If our daughter, DEBORAH A. CORTEZ, is living on the date of the death of the second one of us to die, then the remaining trust estate shall be administered as follows:

1. Income. Commencing as of that date and during Deborah's life, the trustee shall distribute to her, or on her behalf if she becomes incapacitated, all of the net income of the trust, at least quarterly, or at more frequent intervals at Deborah's request. The term, "income," shall not include capital gains, whether short-term or long-term, from the sale of assets of the trust. Any undistributed net income shall be added to principal from time to time.

2. Principal.

a. Commencing one year from the date of the death of the second one of us to die, and continuing each year thereafter on the anniversary of that date during Deborah's life, Deborah may withdraw up to $25,000.00 of the principal of the trust, even to the extent of exhausting principal. This right of withdrawal shall be cumulative from year to year.

b. In addition, the trustee may distribute to Deborah, or on her behalf, so much of the principal as the trustee determines from time to time to be required for her health, support, education, welfare and best interests, even to the extent of exhausting principal.

3. Intent. Our primary concern during Deborah's life is for her health, support, education, welfare and best interests, and the trustee need not consider the interests of any other beneficiaries in making distributions to her or on her behalf for those purposes under this paragraph.

C. Alternate Distribution. If any assets of the trust remain undistributed upon Deborah's death, or if she fails to survive us, the remainder of the trust shall be distributed as follows:

1. One-half (½) to the heirs at law of William D. Short; and

2. One-half (½) to the heirs at law of Phyllis D. Short.

D. Postponement of Possession. If any beneficiary is under the age of thirty-five (35) years at the time he or she becomes entitled to distribution, his or her share shall be maintained in a continuing trust, which shall be administered as follows:

11

1. Income and Principal.  During the term of each trust, the trustee shall pay so much or all of the income and principal of the beneficiary's trust share as the trustee deems necessary and desirable for the health, education, support and maintenance of said beneficiary.

2. Termination.  When such beneficiary reaches the age of thirty (30) years, the trustee shall distribute one-half (½) of the remaining principal and any accrued and undistributed net income of the trust to the beneficiary.  When such beneficiary reaches the age of thirty-five (35) years, the balance of his or her trust share, including both principal and any accrued and undistributed income, shall be distributed to the beneficiary.  If that beneficiary dies before reaching the age of thirty-five (35) years, the trustee shall distribute the principal and income of the trust to the estate of said beneficiary.

Cortez contends that the Trust did not provide for how to administer its assets, beyond the specific $50,000 distribution specified in Paragraph A.2, in the event that Deborah was living and competent when her parents died.  He insists that Paragraph B applied only in the event that Deborah was living but incompetent and that Paragraph C only applied if she predeceased her parents.  Because neither Paragraph applied, the "continuing trust" was not created, the "alternate distribution" provisions were not triggered, and the remainder of the Trust assets were left to Phyllis but not addressed by the terms of Phyllis's will, which incorporated the terms of the Trust and provided that her residuary estate was devised to the trustee to be managed and distributed under the Trust.  Cortez argues that because Phyllis's will did not dispose of her entire estate, the undisposed-of property—the Trust assets present at the time Phyllis died—passed to Deborah via intestacy and then to her estate upon her death.

Cortez further contends that even if Paragraph A did not lead to intestate succession as argued above, the Trust's assets still passed to Deborah's estate under the "alternate distribution"

provisions of Paragraph C because under Florida law, which applies to the Trust, a surviving spouse is an "heir at law" and an heir's right vests at the time of the testator's death. Thus, he argues:

> At the time of William Short's death, Phyllis Short was still alive; she is therefore William's sole heir at law. At the time of Phyllis Short's death, Deborah was still alive and thus she is Phyllis Short's heir at law. Thus, Deborah Cortez, as Phyllis Short's sole heir at law, takes ½ of the Trust. Because Phyllis Short is William Short's sole heir at law, and thus the other ½ of the Trust belongs to her estate, the assets would return to the Trust for the same distribution described above until it is distributed to Deborah Cortez.

Cortez clarifies that he is arguing not that he is an heir of the Shorts but that Deborah "was vested as her parents' heir in law during her lifetime entitling her estate to distribution of the Trust assets."

Finally, Cortez contends that because the Trust included Paragraph D, which postponed via a continuing trust the distribution of Trust assets to any beneficiary younger than thirty-five years old, and because Deborah was older than that when Phyllis died, "no continuing trust was established for her" and she was entitled to immediate distribution of the Trust's assets.

Under Florida law, "[t]he intent of the [testator] as expressed in the terms of the trust controls the legal effect of the dispositions made in the trust." Fla. Stat. § 736.1101(1); *Knauer v. Barnett*, 360 So. 2d 399, 405 (Fla. 1978) ("the intent of the settlor of a trust is controlling"). Courts should attempt to discern the settlor's intent from the plain and ordinary meaning of the terms set forth in an unambiguous trust instrument. *Knauer*, 360 So. 2d at 405; *Nelson v. Nelson*, 206 So. 3d 818, 819 (Fla. Dist. Ct. App. 2016); *Vigliani v. Bank of Am., N.A.*, 189 So. 3d 214, 219 (Fla. Dist. Ct. App. 2016). In determining the settlor's intent, we construe the trust instrument as a whole and consider the general dispositional scheme without isolating words or phrases. *Vigliani*,

13

189 So. 3d at 219. We assume that the words used were chosen with purpose; will not treat any part of the trust's terms as "a redundancy or surplusage if any meaning, reasonable and consistent with other parts, can be given to it"; and will strive to construe the document so as not to produce absurd results. *Roberts v. Sarros*, 920 So. 2d 193, 196 (Fla. Dist. Ct. App. 2006).

The Shorts' intent in creating the Trust is clearly stated—to ensure that after their deaths, Deborah's needs were met during her life. Further, in referencing "the interests of any other beneficiaries" in Paragraph B.3 and providing Paragraph C, the Shorts expressed an intent to pass any remaining Trust assets to their heirs at law after Deborah's death. Upon Phyllis's death, the cash distributions were made as specified in Paragraph A.1 and Deborah was entitled to distributions from the Trust's income under Paragraph B.1 *during her lifetime*.[6] As for what the Shorts intended to happen when Deborah died, we cannot agree with Cortez's strained reasoning, which relies on taking the last sentence of Paragraph A.2 out of context to conclude that because Deborah was living and competent when Phyllis died, the remainder of the trust estate was not to be "administered as provided below," meaning Paragraph C was never triggered and the Trust assets instead passed through intestacy to Deborah and her estate. *See In re Smith*, 49 So. 2d 337, 339 (Fla. 1950) ("A construction which results in partial intestacy will not be used unless such intention appears clearly. It is said that the courts will prefer any reasonable construction, or any construction which does not do violence to the testator's language, to a construction which results in partial intestacy."); *In re Estate of Baer*, 446 So. 2d 1128, 1128 (Fla. Dist. Ct. App. 1984) ("the law abhors intestacy").

---

[6] Because Deborah did not survive Phyllis by more than a year, she was never entitled to withdraw from the Trust's principal.

14

Paragraph C specifies that "[i]f any assets of the trust remain undistributed upon Deborah's death, or if she fails to survive us, the remainder of the trust estate shall be distributed" to William's and Phyllis's heirs at law. Reading Article VIII as a whole, we hold that the Trust is unambiguous in providing that upon Deborah's death, Paragraph C applied to govern the distribution of any remaining Trust assets, effective on the date of Deborah's death. The only question is whether either Deborah's estate or Cortez, as Deborah's heir, should be considered an "heir at law" of the Shorts under Paragraph C.

Under Florida law, "'[h]eirs' or 'heirs at law' means those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent." Fla. Stat. § 731.201(20). As the Shorts did not die intestate, however, Florida's intestate rules,[7] under which Cortez is Deborah's heir at law, do not affect our interpretation of the Trust.

The Florida Trust Code[8] defines a "beneficiary" as someone with "a present or future beneficial interest in a trust, vested or contingent, or who holds a power of appointment over trust property in a capacity other than that of trustee."[9] *Id*. § 736.0103(4). "Future interest" includes "an alternative future interest and a future interest in the form of a class gift, and "future interest under the terms of a trust" to mean "a future interest created by an inter vivos or testamentary transfer to

---

[7] *See generally* Fla. Stat. §§ 732.101-.111.

[8] The Trust Code became effective July 1, 2007, *see* ch. 2006-217, Laws of Fla., and generally applies "to all trusts created before, on, or after" that date, *see* Fla. Stat. § 736.1303.

[9] The Florida Probate Code defines "beneficiary" to "mean[] heir at law in an intestate estate and devisee in a testate estate. The term 'beneficiary' does not apply to an heir at law or a devisee after that person's interest in the estate has been satisfied. In the case of a devise to an existing trust or trustee, or to a trust or trustee described by will, the trustee is a beneficiary of the estate." *Id.* § 731.201(2).

15

an existing trust or creating a trust or by an exercise of a power of appointment to an existing trust directing the continuance of an existing trust, designating a beneficiary of an existing trust, or creating a trust." *Id.* § 736.1106(1)(c), (d). Further,

> A future interest under the terms of a trust is contingent upon the beneficiary surviving the distribution date. Unless a contrary intent appears in the trust instrument, if a beneficiary of a future interest under the terms of a trust fails to survive the distribution date, and the deceased beneficiary leaves surviving descendants,[10] a substitute gift is created in the beneficiary's surviving descendants. They take per stirpes the property to which the beneficiary would have been entitled if the beneficiary had survived the distribution date.

*Id.* § 736.1106(2).

"A person's right to share in the distribution of the corpus of the trust depends on his surviving until the trust terminates, and being within the class of persons described by the testator as persons eligible to take the corpus." *Lewis v. Green*, 389 So. 2d 235, 243 (Fla. Dist. Ct. App. 1980); *see also* Fla. Stat. § 732.514 ("The death of the testator is the event that vests the right to devises unless the testator in the will has provided that some other event must happen before a devise vests."). In *Lewis*, the testator established a trust for his wife, children, and one orphaned granddaughter, specifying that the trust was to continue until twenty-one years "after the death of [the testator's] last surviving grandchild who was then living," at which point the assets would be divided among the surviving heirs of the trust's beneficiaries. 389 So. 2d at 238-39. At the time of

---

[10] "'Descendant' means a person in any generational level down the applicable individual's descending line and includes children, grandchildren, and more remote descendants." *Id.* § 731.201(9).

16

the *Lewis* opinion, three grandchildren were still living, and in concluding that it was not yet possible to determine who would receive the distribution, the court stated,

> The term "heirs" as used in this trust cannot be given its "normal" meaning—those persons who would take the property of the "issue" of the beneficiaries by intestate succession—because there can be no "heir" of a living person and the trust must terminate and vest 21 years after the death of the last living grandchild. Thus we construe the word "heirs" as used in the will as meaning words of "limitation" as opposed to "words of purchase," and in this case synonymous with the word "issue."

*Id*. at 243-44 (footnotes omitted). Instead of using the "normal" meaning of "heir," the court observed that the potential "members of the class" were the "then surviving issue of" the testator's children. *Id*. at 244.

The application of Paragraph C was triggered when Deborah died intestate. At that time, Deborah's assets, including the $50,000 distribution and her distributions from the Trust's income during her life, flowed into her estate, and her interests under the Trust ended, as did her estate's interests. The remaining Trust assets were to be distributed as directed in Paragraph C. *See id.* The Trust did not state that its assets should be distributed to the Shorts' heirs' heirs at law. *See Karasek v. William J. Lamping Trust*, 909 So. 2d 552, 553-54 (Fla. Dist. Ct. App. 2005). It stated it should be distributed to the Shorts' heirs at law. Although Cortez is Deborah's heir at law, he is not the Shorts' heir at law, nor is he a descendent of theirs or Deborah's.

Following the plain language of the Trust, the logic of Florida case law, and Florida statutes related to inheritance and trusts, we conclude that the trial court did not err in dismissing claims brought by Cortez, whether as an individual or as representative of Deborah's estate, against appellees asserting an interest in the remaining Trust assets, other than his claim for undistributed

income during Deborah's life. To follow Cortez's argument would essentially render Paragraph C a nullity and lead to an absurd result in the face of the Shorts' clearly expressed intent.

Cortez further argues that in dismissing all of his claims against appellees, the trial court granted more relief than was sought by appellees' motion for summary judgment. He asserts that appellees sought summary judgment as to only two of his requests for declaratory relief. He further argues that because he filed an amended petition in intervention seeking a declaration as to the estate's rights under Article VIII, paragraph A of the Trust, that claim is pending in the original lawsuit. If, however, it was "swept up in the severed suit," he argues, the trial court improperly dismissed that request. Cortez is correct that appellees sought summary judgment only as to his claims related to any interests Deborah's estate could assert under Paragraph C. The trial court granted summary judgment and severance only as to those claims, leaving his claims related to distributions of the Trust's income that should have been made during Deborah's lifetime pending in the original suit.[11] Cortez cannot somehow nullify the trial court's granting of summary judgment by filing an amended petition in the original suit essentially raising the same claim—seeking a declaration that neither Phyllis's will nor the Trust provided for disposition of its assets if Deborah was alive and competent upon Phyllis's death and that the assets therefore flowed to Deborah's estate through intestate succession. *See Berezoski v. Texas State Bd. of Med. Exam'rs*, No. 03-03-00735-CV, 2004 WL 1573870, at *4 (Tex. App.—Austin July 15, 2004, no pet.) (mem. op.) (discussing doctrines of res judicata, collateral estoppel, and law of the case).

---

[11] Also pending in the original suit is Cortez's claim against Linda Murray, as successor trustee, for breach of fiduciary duty.

18

Having considered all of his arguments related to the granting of summary judgment on his claims related to Deborah's estate's rights to the remaining Trust assets, we overrule Cortez's second issue on appeal.

**Severance**

We now turn to Cortez's argument that the trial court's severance order improperly divided interwoven claims. He argues that his claims related to undistributed income, breach of fiduciary duty, and unauthorized use of Trust funds, which remained in the original action—as well as his claims related to Deborah's estate's rights to the remaining Trust assets under Paragraph C—all relate to the ownership, administration, and final distribution of the trust and that it was therefore improper to sever the latter claims from the former.

We review a severance order for an abuse of discretion. *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996); *In re American Nat'l Cty. Mut. Ins. Co.*, 384 S.W.3d 429, 433 (Tex. App.—Austin 2012, orig. proceeding). A trial court does not abuse its discretion in severing claims if the controversy involves more than one cause of action; the severed claim or claims could be asserted independently in a separate lawsuit; and the severed claims are not so interwoven with the other claims that they involve the same facts and issues. *Akin*, 927 S.W.2d at 629. In a case with multiple defendants, if summary judgment is properly granted in favor of one defendant, it is generally proper to sever the claims against that defendant for purposes of appeal. *See Cherokee Water Co. v. Forderhouse*, 641 S.W.2d 522, 526 (Tex. 1982) ("The reformation claim was severed after summary judgment was granted for Cherokee, apparently in an effort to expedite appellate review of the declaratory judgment action. While it may have been preferable to try the

reformation issue before an appeal would normally lie, we cannot say that any abuse of discretion occurred."); *Arredondo v. City of Dallas*, 79 S.W.3d 657, 665 (Tex. App.—Dallas 2002, pet. denied); *Smith v. Texas Farmers Ins. Co.*, 82 S.W.3d 580, 588 (Tex. App.—San Antonio 2002, pet. denied); *Guidry v. National Freight, Inc.*, 944 S.W.2d 807, 812 (Tex. App.—Austin 1997, no writ).

Cortez asserted two general classes of claims: claims that accrued during Deborah's lifetime—whether she should have received additional distributions of the Trust's income under Paragraph B.1 and whether Murray as successor trustee breached her fiduciary duty to Deborah—and claims that accrued after Deborah died—whether her estate inherited the remaining Trust assets under Cortez's construction of the Trust documents. His claims arising during Deborah's lifetime were asserted against the Trust and Murray, as successor trustee, whereas his claims related to the interpretation and applicability of Paragraph C were brought against appellees, as potential heirs under the Trust. Based on our review of the record, the trial court did not abuse its discretion in determining that Cortez's claims related to whether Deborah's estate retained any right to remaining Trust assets under Paragraph C could be severed from his claims related to how the Trust was administered during her lifetime. *See Forderhouse*, 641 S.W.2d at 526; *Guidry*, 944 S.W.2d at 812.[12] We overrule Cortez's first issue on appeal.

---

[12] *See also In re Zaraienh*, No. 13-16-00465-CV, 2018 WL 4000400, at *6 (Tex. App.—Corpus Christi June 6, 2018, orig. proceeding) (mem. op.) (trial court does not abuse its discretion in severing claim "for purposes of enabling the parties to expedite appellate review of a partial summary judgment"); *Johnson v. J. Hiram Moore, Ltd.*, 763 S.W.2d 496, 502 (Tex. App.—Austin 1988, writ denied) ("severance after summary judgment in effort to expedite appellate review is not an abuse of discretion"); *Saxer v. Nash Phillips-Copus Co. Real Estate*, 678 S.W.2d 736, 739 (Tex. App.—Tyler 1984, writ ref'd n.r.e.) ("Although a severance is sometimes ordered merely to expedite appellate review of a partial summary judgment, that reason alone is not grounds to find an abuse of discretion if the claim is properly severable.").

## Conclusion

Having overruled Cortez's issues on appeal, we affirm the trial court's order granting summary judgment.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Field and Goodwin
   Justice Field not participating

Affirmed

Filed:   February 28, 2019

21